**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; AND WILLIAM ALDENBERG, | ) ) ) ) ) ) ) ) ) ) | ADV. PROC. NO. 22-05019<br><br>AUGUST 3, 2022 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALEX EMRIC JONES; FREE SPEECH SYSTEMS, LLC, | ) ) ) | |
| Defendants. | ) ) | |

<u>**EMERGENCY MOTION FOR REMAND**</u>

These three removed cases belong in the Connecticut Superior Court, where they have been pending for over four years; where over 900 entries have been docketed; where over 250 orders have been entered, all by the same presiding judge; and where jury selection has *already begun* and where a trial on damages is scheduled to begin in one month. The legal claims, which sound in defamation, false light, negligent and intentional infliction of emotional distress and violation of the Connecticut Unfair Trade Practices Act, are purely state-law claims, as is the adjudication of damages based on those claims. The issues to be tried are quintessential jury questions, and the plaintiffs long since claimed them to the jury. The presentation of evidence in the trial on damages, which is to begin September 6, is estimated to take three-to-four weeks. Denying remand would raise unnecessary jurisdictional issues, waste judicial resources, and

violate principles of comity. Remand is warranted based on permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b).[1]

Moreover, these removals are taken in a bad faith effort to undermine the authority of the Connecticut Superior Court. The Jones defendants have repeatedly used removal as a delaying tactic, and this time is no different. They have attempted removal to the United States District Court for the District of Connecticut three times and been remanded three times. This is their fourth try. This Court should not permit them to abuse the removal statutes any more than they already have. After *four years* of "'obfuscation and delay on the part of the defendants,'"[2] jury selection is already under way and the presentation of evidence is set to commence one month from now. In connection with Mr. Jones' recent refusal to attend his deposition, which resulted in the imposition of contempt sanctions, the trial court stated: "the existing trial date … is a firm trial date and parties and counsel should plan accordingly."[3] These removals are the Jones

---

[1] There are three consolidated cases in the Connecticut Superior Court: *Lafferty v. Jones* (UWY-CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY-CV18-6046438-S). For purposes of remand analysis, there is no significant difference among the three cases. (Thus, when these cases were removed from the Connecticut Superior Court to the Connecticut District Court in 2020, orders transferring the cases to Judge Hall's docket were entered in all three cases (on December 4, 2020 in *Lafferty v. Jones* (3:20-cv-01723-JCH), on December 2, 2020 in *Sherlach v. Jones* (3:20-cv-01724-JCH), and on December 14, 2020 in *Sherlach v. Jones* (3:20-cv-01725-JCH)). For this reason, and to make the Court's work more efficient, this identical Motion to Remand is being filed in all three removed bankruptcy cases: *Lafferty v. Jones* (22-05019), *Sherlach v. Jones* (22-05020), and *Sherlach v. Jones* (22-05021).

[2] See *Lafferty v. Jones*, 336 Conn. 332, 374 (2020) (quoting the trial court in its first major sanctions ruling), *cert. denied*, 209 L. Ed. 2d 529 (Apr. 5, 2021).

[3] Ex. A, Super Ct. DN 788, 3/30/22 Hearing at 25:4-9. Because of the numerous different court dockets to be referenced, we use the following citation conventions. "BR DN" citations indicate citations to this Court's docket for the presently removed case. Citations to the dockets of the first two removals to the Connecticut District Court in July 2018 and November 2020 are referred to by the District Court case number and docket entry. Citations to the third removal to this Court in April 2022 are referred to as BR No. 22-05004. Citations to the Superior Court

defendants' response.

The plaintiffs request that the Court grant remand on an emergency basis, so that the Jones defendants do not succeed in their goal of using this removal to disrupt the Connecticut state court trial schedule. The plaintiffs also request sanctions in connection with this abusive removal.

## I.    LEGAL STANDARD

"A court will remand a case, '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.' 28 U.S.C. § 1447(c). '[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court[.]' *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). The party asserting jurisdiction 'must support its asserted jurisdictional facts with competent proof and justify its allegations by a preponderance of the evidence.' *S. Air, Inc. v. Chartis Aerospace Adjustment Servs., Inc.*, 3:11-cv-1495 (JBA), 2012 WL 162369, at *1 (D. Conn. 2012) .... 'In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.' *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)." *Breakell v. 3M Co.*, 2019 WL 3162490, at *2 (D. Conn. July 16, 2019) (Bolden, J.)

---

docket in the Lafferty case are indicated "Super. Ct. DN." (By order of the Connecticut Superior Court, all three state-court cases were consolidated on January 2, 2019. Since then, the same filings have been made and the same orders have been entered in all three cases.) Finally, under the protective order entered in the Connecticut Superior Court case, each party can claim part or all of a deposition as confidential. The portions of transcript attached hereto are not designated confidential by any party and any confidentiality notations on the transcript pages apply to other portions of the transcript that have not been attached hereto.

"Even if there is subject matter jurisdiction, and a case has been timely removed, a court may remand 'such claim or cause of action on any equitable ground." *Id.* (quoting 28 U.S.C. § 1452(b)). Further, the Court may exercise its discretion to permissibly abstain from hearing a case "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).

## II.    RELEVANT PROCEDURAL HISTORY

### A.  The Plaintiffs' State Law Claims

The plaintiffs are immediate family members of children and educators killed in the Sandy Hook Elementary School shooting on December 14, 2012, and one first responder to that shooting ("the families"). The families bring these three consolidated actions against Alex Emric Jones and his company Free Speech Systems, LLC ("the defendants"). The Alex Jones Show and other Infowars programming stream on Infowars.com and banned.video and via about sixty radio stations, reaching an audience of over two million people, and, until recently, on Jones's YouTube channel, which had more than 2.3 million subscribers. BR DN 1, Notice of Removal, Ex. B, Complaint ¶¶ 30, 40.

For more than five years, Alex Jones targeted the families. Jones and his Infowars "contributors" told an audience of millions that the Sandy Hook shooting was "a synthetic completely fake with actors," a "hologram," an "illusion" and "the fakest thing since the three-dollar bill," "staged" to take away their guns, and that the Sandy Hook families were "paid … totally disingenuous" "crisis actors" who faked their loved ones' deaths. Jones urged the audience to "investigate," knowing his audience would respond by cyberstalking, harassing, and

threatening the families.[4] These are only a few excerpts from the families' 39-page, 394-paragraph initial complaint, which alleges a course of conduct sounding in false light, negligent and intentional infliction of emotion distress, violation of the Connecticut Unfair Trade Practices Act, and defamation.[5]

### B. The Four-Year History of the Case in the Connecticut Superior Court Prior to the First Bad Faith Bankruptcy

This matter has proceeded in Connecticut Superior Court for over four years, all before a single judge, who is now very familiar with the complex factual and legal issues of this case and its extensive procedural history. Through the course of the case, the defendants have resisted the authority of the Connecticut Superior Court by every conceivable means. They have removed three times to the United States District Court and been remanded each time. No.: 3:18-CV-1156 (JCH), DN 58, 11/5/18 Ruling Re: Mot. for Remand; No. 3:20-cv-1723 (JCH), DN 44, 3/5/21 Ruling Re: Mot. for Remand; BR No. 22-05004, ECF No. 37, 6/1/22, Remand Order. Jones was sanctioned in June 2019 for resisting discovery and threatening the families' counsel in a manner designed to unfairly influence the proceedings. That sanction was affirmed by the Connecticut Supreme Court in *Lafferty v. Jones*, 336 Conn. 332, 374 (2020).

In October 2021, knowing another sanction of default was likely imminent, the Jones

---

[4] The citations to the quotations, in the order they appear, are: BR DN 1, Notice of Removal, Ex. B, Complaint ¶ 185 (Jones on his radio show); ¶ 223 (Jones on his radio show); ¶¶ 140-41 (Halbig and Jones on Jones's radio show); ¶¶ 117, 273 (Jones on his channel and at a press conference), ¶¶ 138, 149, 223 (Jones on his radio show); ¶ 295 (statement by an Infowars "contributor" on Jones's radio show); ¶¶ 112, 120-21, 185, 197 (Jones on his channel and on his radio show). Identical allegations appear in the complaints in the two consolidated actions.

[5] The Connecticut Superior Court has determined that the families' allegations are sufficient in all respects under Connecticut law. In November 2021, the court denied the Jones defendants' motion to strike the families' complaint (the state court equivalent of the federal 12(b)(6) motion). See Super. Ct. DN 580.

defendants attempted to avoid it by moving to recuse the Connecticut Superior Court judge who had presided over the case since its inception. *See* Super. Ct. DN 519. That motion, of course, was denied. *See* Super. Ct. DN 519.20.

In November 2021, following the Jones defendants' repeated violations of discovery obligations and court orders, the court entered a disciplinary default against the Jones defendants. The court found that the Jones defendants' "failure to produce critical documents, their disregard for the discovery process and procedure and for Court orders is a pattern of obstructive conduct that interferes with the ability of the plaintiffs to conduct meaningful discovery and prevents the plaintiffs from properly prosecuting their claims." Ex. B, Super. Ct. DN 574, 11/15/21 Hrg. Tr. at 15:2-7. The court concluded that the Jones defendants' "callous disregard of their obligations to fully and fairly comply with discovery and Court orders" left the court with no other option than to enter a default. *Id.* at 14:15-17. As a result of the default, damages, including punitive damages, remain to be tried. Jury selection is scheduled for August 2, with trial to begin on September 1. Super. Ct. DN 798, Motion to Modify Scheduling Order at 2; DN 798.10, Court Order Granting Motion to Modify Scheduling Order; DN 788, 3/30/22 Hrg. Tr. at 25:4-9.

### C. The First Bad Faith Bankruptcy Filings

On April 18, 2022, three of the Jones defendants – Infowars, LLC; Infowars Health, LLC; and Prison Planet TV, LLC (hereafter, "the shell company debtors") – filed petitions for chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. *See e.g.* Case No. 22-60020, Bankruptcy Petition of InfoW, LLC (aka Infowars, LLC). Throughout discovery the Jones defendants represented that these three entities are essentially shell companies with no employees, no business purpose, little-to-no assets, all completely

controlled by Alex Jones.[6] The Jones defendants intended to use the bankruptcy filings of these entities to delay the state court case's progress to trial while at the same time shielding Jones's real finances from disclosure in the bankruptcy court.

The shell company debtors held no operating assets or financial assets. They had no businesses to reorganize or liquidate. The U.S. Trustee for Region 7 immediately filed a motion to dismiss the case, arguing that "[t]he strategy employed here – filing bankruptcy for three non-operating members of a larger enterprise to channel and cap liability against the other, revenue-generating members of that enterprise and its owner using a bankruptcy subchapter designed to aid small, struggling businesses – is a novel and dangerous tactic that is abusive and undermines the integrity of the bankruptcy system." *In re InfoW, LLC*, Case No. 22-60020, ECF No. 50, at 2 (Bankr. S.D. Tex. Apr. 29, 2022). The U.S. Trustee also argued that "Jones and FSS hand-picked . . . three holding companies for bankruptcy as part of a scheme engineered solely to limit their own legal liability, to deny parties in interest a full accounting of their assets, and to deny individuals their day in court and imminent recovery for established liability." *Id.* at 16. The U.S. Trustee declared the bankruptcy filings to be "classic bad faith filings" that "serve no valid

---

[6] In this action, the corporate designee for Infowars, LLC testified that it "has no business purpose" and is solely owned by Alex Jones. Ex. C, 6/23/21 Dep. Tr. at 18:13, 19:23. In the deposition of Free Speech System's corporate designee on February 14, 2022, in a separate action brought in Texas state court against several of the Jones defendants, the corporate designee described Infowars, LLC as "just a holder" that "doesn't do any business." Ex. D, 2/14/2022 Dep. Tr. at 391:10, 392:5-6. The corporate designee for Infowars Health, LLC testified during a deposition in this action that the company has never employed anyone, has no office space, has never had any contracts with another person or entity, has never conducted any business except with one other entity, and is solely owned and managed by Alex Jones. *See* Ex. E, 6/23/21 Dep. Tr. at 14:4-7, 15:17-18, 15:21-23. The corporate designee for Prison Planet TV, LLC testified during a deposition in this action that the company has never employed anyone, has not had any purpose since September 2018, and is solely owned and managed by Alex Jones. *See* Ex. F, 6/23/21 Dep. Tr. at 14:17-21, 19:9-11, 22:1-12.

bankruptcy purpose and were filed to gain a tactical advantage in the Sandy Hook Lawsuits." *Id.* at 2.

On April 21, the families filed motions for remand in the Connecticut bankruptcy court, seeking immediate remand. *See, e.g.,* Mot. for Remand, No. 22-05004, ECF No. 5. That same day, the families also filed motions to expedite briefing and argument on the motions for remand. *See, e.g.*, Mot. for Order, No. 22-05004, ECF No. 6. On May 2, 2022, again seeking to ensure that Alex Jones and Free Speech Systems, LLC did not succeed in delaying these consolidated cases through their bad faith filings, the families filed notices of dismissal under Fed. R. Civ. P. 41 of their claims against the shell company debtors only and sought remand. *E.g.*, Notice of Dismissal, 22-05004, ECF No. 16 at 3. The shell company debtors *objected* to the dismissal, asserting, among other things, that it might not be valid. *See, e.g.*, Obj., No. 22-05004, ECF No. 19 (denying "that a dismissal pursuant to Rule 9041 is proper and is not an automatic dismissal binding on this Court."). They objected even though the supposed justification for their bankruptcy was the existence of the families' claims against them. *See, e.g.*, DN 809, Notice of Bankruptcy at Ex. A, Declaration of W. Marc Schwartz ("The Debtor's [sic] . . . have no debt or other liabilities other than those related to pending or potential litigation").

Meanwhile, the families also promptly moved to dismiss the bankruptcy case as a bad faith filing. *See In re InfoW, LLC*, Case No. 22-60020, ECF No. 36. A briefing schedule was set which would have resulted in delay and could have affected the families' state-court trial date. In order to obtain immediate remand and retain their trial date, the families obtained an order from this Court confirming that their claims against the shell company defendants were dismissed. The Court entered that order, simultaneously ordering the shell company debtors to withdraw their removals. *See, e.g.*, Order, No. 22-05004, ECF No. 33. The shell company debtors complied with

the order. *See, e.g.*, Withdrawal of Removal, No. 22-05004, ECF No. 35. As a result, on May 31, this action ceased to be removed.[7]

### D.  The Return to Connecticut Superior Court

Following remand, Jones and FSS are the only remaining defendants in the state court action.[8] The Connecticut Superior Court confirmed that jury selection would begin on August 2, with evidence to commence on September 6. *See* Super. Ct. DN 820, 6/2/22, Order. Preparations for trial resumed immediately: the families disclosed expert witnesses, depositions of those witnesses were completed or scheduled, the parties filed a Joint Trial Management Report, disclosed trial witnesses and designated deposition transcripts for use at trial, and filed substantial briefing on motions in limine and other pre-trial issues.

### E.  This Second Bankruptcy

Alex Jones caused FSS to commence a second chapter 11 bankruptcy on July 29, 2022, in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division. Neither FSS nor Alex Jones has filed a motion to extend the bankruptcy automatic stay to Jones, a non-debtor. On July 30, Jones filed a Notice and Suggestion of Bankruptcy in the Connecticut Superior Court, arguing that "as a result" of the bankruptcy, "all proceedings in this case are stayed pursuant to the automatic stay provisions of 11 U.S.C. § 362." Super. Ct. DN 902,

---

[7] Because the dismissal of the shell company debtors from the Connecticut Action ended the families' interest in the shell company debtors' bankruptcy, the families withdrew their motion to dismiss the bankruptcy. The Texas plaintiffs exited the shell company debtors' bankruptcy in a slightly different way. They stipulated with the shell company debtors to a withdrawal against them in the Texas Actions and based on that stipulation obtained remand. The United States Trustee and the shell company debtors then agreed to dismissal of the chapter 11 cases, which the bankruptcy court, Judge Christopher M. Lopez, ordered on June 10, 2022.

[8] On June 30, 2022, the families withdrew their complaint as to Genesis Communications Network, Inc., a non-Jones defendant.

7/30/22, Not. & Suggest. of Bank. On July 31, the Connecticut Superior Court issued an order

addressing the notice of bankruptcy and ordering the parties to appear as scheduled on August 2:

> The court has reviewed the notice of bankruptcy filed by the defendant Free Speech
> Systems LLC. It appears that the defendant Alex Jones has not filed for bankruptcy. As
> such, counsel are ordered to appear in person on Tuesday, August 2, 2022 at 9:00 a.m. as
> scheduled, including counsel on the attempted cross-claim. Failure to do so will result in
> sanctions.

Super. Ct. DN 903, 7/31/22, Order.

On July 31, the families filed an Emergency Motion for Relief from the Automatic Stay

in the Texas Bankruptcy Court. *See* Ex. G, 7/31/22, Emerg. Mot. The court scheduled a hearing

on the families' emergency motion for Friday, August 5, 2022.

On August 2, the parties appeared for jury selection. The court confirmed with counsel

for Alex Jones that neither FSS nor Alex Jones had moved to extend the automatic stay to Alex

Jones, a non-debtor. *See* Ex. H, 8/2/22 Hearing Tr. at 4:8-21 (Connecticut Superior Court asking,

"whether the bankruptcy court granted a motion to extend the bankruptcy stay to Alex Jones

who, to my knowledge, has not filed bankruptcy" and counsel for Jones responding, "[n]o such

motion was filed, therefore, no such motion is granted"). The parties began conducting voir dire.

That afternoon, after the parties had already begun interviewing prospective jurors, Alex Jones

caused FSS to remove the case to this Court. *See* BR DN 1, 8/2/22, Notice of Removal. Upon

being informed of the removal, the Superior Court judge in charge of the case ordered the parties

to be prepared to appear for jury selection in order to resume proceedings as to Alex Jones within

24 hours' notice that the case is remanded from the United States Bankruptcy Court for the

District of Connecticut.  The court's order was given in light of the fact that although the

proceedings are currently automatically stayed as to FSS, pending a decision on the families'

emergency motion for relief from the stay, no motion has been filed to extend the stay to Alex Jones, a non-debtor.

## III.    ARGUMENT

### A.  The Court Should Remand this Action to Connecticut State Court

The Court should remand this action to Connecticut Superior Court under its discretionary authority to order an equitable remand or it should permissively abstain from hearing this action.

The removal statute, 28 U.S.C. § 1452, permits remand to the state court "on any equitable ground." 28 U.S.C. § 1452(b); *In re Nat'l E. Corp.*, 391 B.R. 663, 669-70 (Bankr. D. Conn. 2008) (Krechevsky, J.). "Courts maintain wide discretion to make an equitable remand finding and 'equitable remand may be raised *sua sponte* by a court notwithstanding the absence of a motion to remand by any party.'" *Breakell v. 3M Co.*, 2019 WL 3162490, at *4 (D. Conn. July 16, 2019) (Bolden, J.) (quoting *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 61 (S.D.N.Y. 2011)). Additionally, the court may permissively abstain from hearing this action under 28 U.S.C. § 1334(c)(1), a decision that is left to the court's discretion. *See Nat'l E. Corp.*, 391 B.R. at 669.

Courts consider the following factors when determining whether to remand a case based on equitable considerations or their discretionary authority to abstain:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*E.g.*, *Breakell*, 2019 WL 3162490, at *4; *Nat'l E. Corp.*, 391 B.R. at 670.[9]

As in Judge Bolden's decision in *Breakell*, these factors and general considerations of equity, justice, efficiency, and comity weigh strongly in favor of remand. In *Breakell*, the plaintiff sued numerous defendants for products liability, fraud, and premises liability in Connecticut Superior Court. Two years into the proceedings, one defendant filed for chapter 11 bankruptcy. Five months before trial, two other defendants removed the action to the United States District Court for the District of Connecticut under 28 U.S.C. § 1334(b) and 28 U.S.C.§ 1452(b), claiming "related to" jurisdiction. The plaintiff filed a motion to remand the action to Connecticut Superior Court. Applying the seven factors above, Judge Bolden remanded the case to the Connecticut Superior Court.

### 1.   Remand Will Result in More Efficient Bankruptcy Administration

Remand would not negatively affect the efficient administration of the bankruptcy estate. Indeed, remand would benefit the efficient administration of the bankruptcy estate. One consideration here is whether the state law claims require the special expertise of the bankruptcy court. *See, e.g. In re 9281 Shore Rd. Owners Corp.*, 214 B.R. 676, 696 (Bankr. E.D.N.Y. 1997) ("[T]he state law claims presented by [this action] do not require any 'special expertise' of the Bankruptcy Court."). There are *no* bankruptcy issues to be decided in these removed actions; they are purely state law tort claims. In this situation, "the expertise of the State Court would certainly effect a more efficient estate administration since state court judges are very familiar with the [Connecticut] law" governing the tort and state statutory claims at issue. *See id.*

Moreover, this action was undergoing its "final phase," *In re Montague Pipeline Techs.*

---

[9] Since courts address both equitable remand and permissive abstention through this multi-factor test, we analyze both bases for remand simultaneously, through analysis of these factors.

*Corp.*, 209 B.R. 295, 300 (Bankr. E.D.N.Y. 1997), when Alex Jones caused FSS to remove the action during jury selection. That final phase will be complex, with six outstanding motions in limine and several other outstanding motions requiring adjudication, and then a two-to-three week jury trial. As noted in *In re Montague Pipeline Techs. Corp.*, it would be highly problematic for a busy bankruptcy court to disrupt its own docket by undertaking to adjudicate a complex state-law trial: "If this Court were to occupy itself with the remaining portion of an essentially state court action, it would actually impede the efficient administration of the bankruptcy estate as significant delay might result from this Court's full docket." *Id.* In sum, remand will best serve the purpose of bankruptcy efficiency.

## 2.   The Removed Actions Present Exclusively State Law Issues

The issues remaining in this case are exclusively state law issues, a factor strongly favoring remand. "All of the claims asserted in the complaint . . . are based on state-law tort [common law]," *Nat'l E. Corp.*, 391 B.R. at 670, and on state statutory law (CUTPA). The issues to be tried are state-law damages issues resulting from the Jones defendants' committing these torts and violating CUTPA. As in *Nat'l E. Corp.*, another case where remand was ordered, the families' claims arose "solely under state law." *Id.* Also as in *Nat'l E. Corp.*, the sole basis for federal question jurisdiction is the filing of bankruptcy petitions. *See id.* ("The only basis for federal question jurisdiction is that the debtor, who was one of the guarantors of White Oak's note, subsequently filed a bankruptcy petition."). In short, the issues to be decided here are not closely tied to any substantive issues to be decided in the bankruptcy case.

The Connecticut Superior Court is far better suited to decide these issues, both because of its familiarity with Connecticut law and because of its familiarity with this particular case. Trial readiness matters. *See Breakell*, 2019 WL 3162490, at *6 (because the Connecticut

Superior Court "has deemed the case ready for trial, it is better able to apply and respond to issues of Connecticut law"); *see also Madar v. Johnson & Johnson*, 2019 WL 2723463, at *8 (N.D.N.Y. July 1, 2019) (Suddaby, C.J.) (giving weight to state court's involvement in the action for "more than sixteen months"). The Connecticut Superior Court judge presiding over this case has overseen dispositive motion practice, adjudicated discovery battles, confronted the Jones defendants' repeated abusive conduct and sanctioned them accordingly, overseen preparations for trial, and begun jury selection. In short, due to the predominance of state law issues, remand is the far more prudent and reasonable determination.

### 3. The Factual Issues to Be Tried Are Extensive and Complex

The state law damages claims at issue involve complex factual questions and evidentiary presentation. There are fifteen plaintiffs who will testify regarding the extreme emotional distress they suffered as a result of Alex Jones's claims that they were nothing more than "crisis actors" perpetrating a fraud on the American people. To give a further example of the complexity of the factual questions in issue, some of the evidentiary presentation will concern the reach of Alex Jones's defamatory broadcasts across the worldwide web, both through his websites Infowars.com and bannedvideo.com, and through social media platforms he used to spread his lies, including Facebook, Youtube, and Twitter. Accordingly, the complexity of the evidentiary presentation, all of which will be evaluated under Connecticut state law damages principles, again supports remand. *See Breakell*, 2019 WL 3162490, at *6 (presence of complex state law issues support remand).

### 4. Principles of Comity Strongly Support Remand

This action has been proceeding in Connecticut Superior Court for over four years. It is a "mature pending litigation" in state court. *In re Granoff*, 242 B.R. 216, 220 (Bankr. D. Conn.

1999) (Dabrowski, J.). The claims here are brought under Connecticut common law and the
Connecticut Unfair Trade Practices Act. In *In re Granoff*, Judge Dabrowski said the following
about similar claims:

> Connecticut's Civil Larceny Statute and Unfair Trade Practices Act, as well as
> its common law of contract, conspiracy, fiduciary duty, and intentional tort, are
> … remedial legal schemes [that have] spawned an intricate, complex, and still-
> developing body of state law that is, by all rights, the primary province of state
> *fora.* Each alleged scheme represents a different area of developing
> jurisprudence outside this Court's primary area of expertise. Considerations of
> comity and respect for state law therefore dictate that this Court defer to the
> state courts of Connecticut for interpretations of its common law and state
> statutes.

*In re Granoff*, 242 B.R. 216, 220 (Bankr. D. Conn. 1999). As in *In re Granoff*, the explication
of the state-law legal principles applicable here is the province of the Connecticut courts.
Comity dictates deference to the Connecticut courts on these issues.

Comity also dictates that remand is preferable for an additional reason: this removal is a
deliberate tactic taken to undermine the trial date set by the Connecticut Superior Court. If the
Jones defendants can win even a delay of a few weeks with this removal, they will attempt to
use that delay to avoid the on-time completion of jury selection and the beginning of the
presentation of evidence, deliberately undercutting the Superior Court's scheduling order and
its global exercise of authority over the case.

Comity counsels remand in an additional respect. The Jones defendants are abusing the
removal statutes to defy the trial scheduling orders of the Connecticut Superior Court. That
court, which is familiar with this case over the course of four years, has repeatedly confirmed
that the trial date is "firm." Ex. A, Super Ct. DN 788, 3/30/22 Hearing at 25:4-9; *see also* Super
Ct. DN 846.10, 6/8/22, Order (denying defendants' motion to continue the trial date); Super Ct.
DN 867.20, 7/25/22, Order (denying defendants' motion for reconsideration). This Court

should not undermine the smooth operation of the Connecticut state court by allowing the Jones defendants to evade its scheduling orders.

### 5. The Issues to Be Decided Are Remote from the Bankruptcy Case

For the reasons previously stated, this factor weighs strongly in favor of remand. This action began in state court over four years ago and "the removal action was made after the state court established a trial date and the parties had engaged in discovery." *Breakell*, 2019 WL 3162490, at *6 (noting that one court had found minimal relatedness when the state court proceeding had arisen two years before the bankruptcy proceeding). Indeed, removal was effectuated after jury selection had begun.

### 6. The Families' Right to a Jury Trial Strongly Favors Remand

This action has been scheduled for a jury trial in damages, a right protected by the Connecticut Constitution. Jury selection – for which the month of August has been set aside – began on August 2, 2022. The families' claims against the defendants are personal injury tort claims,[10] and the adjudication of such claims for purposes of distribution in the bankruptcy

---

[10] A very significant component of damages being sought here is the emotional harm suffered by the families based on the defendants' tortious conduct. The phrase "personal injury tort claim" is not defined in the Bankruptcy Code and there is little guidance in the legislative history. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160 (Bankr. D. Conn. 2002). Some courts have adopted a narrow approach limiting this phrase to claims for trauma or bodily injury and other courts have adopted a broad view that encompasses any claim arising out of an invasion of personal rights. *See id.* Judge Weil in *Ice Cream Liquidation* adopted the broader view with the caveat that if the claim has "earmarks of a financial, business or property tort claim, or a contract claim, the court reserves the right to resolve the 'personal injury tort claim' issue by (among other things) a more searching analysis of the complaint." *Id.*, 161. In that case, Judge Weil held that claims of sexual discrimination were personal injury tort claims. *Id.*, 162. Just a few years later, in the context of a pregnancy discrimination claims, Judge Krechevsky adopted Judge Weil's holding in *In re Erickson*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005). Courts applying a similar analysis to this question have held that tort claims of the nature alleged here concerning the infliction of personal emotional harm (outside of a harm to financial, business or property interests) fall within the scope of personal injury tort claims. *See, e.g., In re Miller*, 589 B.R. 550, 563 (Bankr. S.D. Miss. 2018) ("intentional infliction of emotional distress and

16

cases is not a core proceeding and cannot be adjudicated by the Bankruptcy Court. *See* 28 U.S.C. §157(b)(2)(B) and (b)(5). No bankruptcy court may hold a jury trial on a non-core matter: "The bankruptcy court is constitutionally prohibited from holding a jury trial in noncore matters." *Nat'l E. Corp.*, 391 B.R. at 670. Indeed, 28 U.S.C. § 157(e) provides that a bankruptcy court could only preside over a jury trial with the parties' consent and the families do not consent.[11] *See In re Ciclon Negro, Inc.*, 260 B.R. 832, 838 (Bankr. S.D. Tex. 2001) (remanding to state court because bankruptcy court lacked subject matter jurisdiction under 28 U.S.C. § 157(b)(5) "over personal injury tort claims which apparently form the basis for some of the causes of action between these parties" and transferring cases to district court would cause unnecessary costs and duplication of effort).

The basis to remand the case only becomes stronger as this Court's jurisdiction over the underlying claims diminishes. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 164 (Bankr. D. Conn. 2002) (in context of motion for abstention or lift stay to continue pre-bankruptcy litigation). Rather than maintain this action in this Court, whose jurisdiction is questionable at best, the Connecticut Superior Court has jurisdiction, is intimately knowledgeable of the case, and is primed to bring this litigation to conclusion through a trial in damages by the end of

---

alienation of affection claims clearly are personal injury tort claims"); *In re DiMare*, 462 B.R. 283, 309 (Bankr. D. Mass. 2011) ("infliction of emotional distress pled as an independent cause of action is a personal injury tort claim over which the bankruptcy court has no jurisdiction"); *In re Arnold*, 407 B.R. 849, 853 (Bankr. M.D.N.C. 2009) (applying *Ice Cream Liquidation* analysis and holding that "defamation claims constitute personal injury tort claims"); *In re Thomas*, 211 B.R. 838, 841-42 (Bankr. D. S.C. 1997) (holding under both broad and narrow view claim for intentional infliction of emotional distress was personal injury tort claim).

[11] Further, the families' claims against the non-debtor Alex Jones are at the very best not "core" proceedings in the bankruptcy of FSS. There is likely no bankruptcy court jurisdiction at all concerning these claims because they (i) do not arise under Title 11, (ii) do not arise in FSS's case under Title 11, or (iii) are not even related to FSS's bankruptcy case.

September or early October. *See Nat'l E. Corp.*, 391 B.R. at 670 (observing that having to request withdrawal of reference to district court for jury trial would impose additional burden on parties).

### 7. Prejudice to the Involuntarily Removed Families Weighs in Favor of Remand

This factor weighs strongly in favor of remand.[12] As Judge Bolden reasoned in *Breakell*, the prejudice to an involuntary removed plaintiff "strongly favors remand" when the plaintiff has long been litigating the action in state court. *See* 2019 WL 3162490, at *7. Jury selection had already begun when this case was removed.  As stated in *Breakell*, "[r]emoval of the case to federal court now would be prejudicial to [the families], because 'the State Court can efficiently and expeditiously try [an] action which is based entirely on state law.'" *Id.*

### 8. Other Considerations of Equity, Justice, and Comity Favor Remand

The seven factors above are "non-exclusive" and are "a guide to the required inquiry." *Nat'l E. Corp.*, 391 B.R. at 671. "[T]he wise exercise of discretion is rarely a matter of score-keeping or bean-counting. Ultimately, the pursuit of 'equit[y],' 'justice' and 'comity' involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances." *Id*. Additional considerations of equity, justice, and comity weigh heavily in favor or remand.

First, the removal of this case and the underlying bankruptcy filings are abusive and calculated to delay the trial. Only one of the two defendants have filed for bankruptcy. *See Granoff*, 242 B.R. at 220 (listing "the presence in the proceeding of nondebtor parties" as

---

[12] Although this factor is often referred to as "prejudice to the involuntarily removed defendants," *e.g.*, *Nat'l E. Corp.*, 391 B.R. at 670, it is more accurately analyzed as "prejudice to the party involuntarily removed from state court," *e.g.*, *Lalima v. Johnson & Johnson*, 2019 WL 2362362, at *8 (N.D.N.Y. May 24, 2019), because often it is the plaintiffs who are involuntarily removed. That is the case in this action. *See Breakell*, 2019 WL 3162490, at *7 (weighing prejudice to involuntarily removed plaintiff).

additional factor for determining whether to remand). The bankruptcy and removal – following

on the heels of the bad faith bankruptcy of the shell company debtors and the defendants third

failed removal to federal court in April 2022 – are an abuse of the bankruptcy process meant to

cause delay on the eve of trial and allow forum shopping after three prior failed attempts to

remove this action to federal court. Under these circumstances, equity requires granting remand

and allowing this action to proceed in state court. *Cf.  In re Caires*, 611 B.R. 1, 9 (Bankr. D.

Conn. 2020) (Manning, J.) (granting relief from automatic stay when "the Debtor has engaged in

multiple bankruptcy filings affecting the Property and has used the bankruptcy filings as a

scheme to delay foreclosure proceedings against the Property"), *aff'd,* 624 B.R. 322 (D. Conn.

2021); *In re Magnale Farms, LLC*, 2018 WL 1664849, at *6 (Bankr. N.D.N.Y. Apr. 3, 2018)

("[T]he Court can draw a permissible inference of a scheme to hinder, delay, and defraud based

on the mere timing and filing of several bankruptcy cases.").

Second, this action is a "non-core" proceeding. "'Arising under' and 'arising in' cases are

termed core bankruptcy proceedings, while 'related to' cases are termed non-core proceedings."

*Shiboleth v. Yerushalmi*, 412 B.R. 113, 116 (S.D.N.Y. 2009). "Core proceedings encompass both

claims predicated on a right created by title 11 and claims that have no existence outside

bankruptcy. In contrast, a proceeding is non-core if it involve[s] the adjudication of state-created

private rights . . . and the outcome of the proceeding could affect the estate being administered in

bankruptcy." *Id.* at 116-17 (quotation marks omitted). This action is predicated entirely on state-

law private rights under state tort and statutory law. The families' claims are neither "claims

predicated on a right created by title 11," nor "claims that have no existence outside bankruptcy."

And as discussed above, the claims are personal injury torts, the liquidation of which is

statutorily non-core. *See* 28 U.S.C. §157(b)(2)(B); footnote 10, *supra*.  They existed for over four

years prior to the bankruptcy filing on July 29, 2022. Accordingly, this is a "non-core" proceeding, a factor which weighs in favor of remand. *See Shiboleth*, 412 B.R. at 117 ("Because non-core claims do not implicate the essence of federal bankruptcy power, district courts consider such classification of a claim in deciding whether to grant an equitable remand.").

**B. The Jones Defendants' Claim that Removal Is Permissible Based on Diversity Jurisdiction Must Be Rejected**

FSS claims diversity jurisdiction as an additional ground for removal. *See* BR DN 1, Notice of Removal, 2 ("Additionally, there the [sic] diversity jurisdiction under 28 U.S. Code § 1332."). That claim can be quickly rejected.

Chief Judge Hall has already determined that any removal based on diversity jurisdiction would be untimely. No. 3:20-cv-1723 (JCH), DN 44, 3/5/21 Ruling Re: Mot. for Remand, at 13- 17 (remanding to state court because Jones defendants had neither removed based on diversity jurisdiction within one-year deadline nor established exception to deadline). Even if the District Court could and would exercise diversity jurisdiction over this case – which it cannot and would not – that would not supply this Court with any jurisdictional basis to exercise authority over this case. *See, e.g., In re Fort Worth Osteopathic Hosp., Inc.*, 406 B.R. 741, 748 (Bankr. N.D. Tex. 2009) ("The bankruptcy court is not granted jurisdiction to consider matters as to which the authority of federal courts is grounded in diversity jurisdiction.").

**C. The Court Should Award Fees and Costs Pursuant to 28 U.S.C. § 1447(c)**

Far from being a legitimate procedural move, this removal is the latest episode in the Jones defendants' long history of "obfuscation and delay" and "bad faith litigation misconduct." *Lafferty v. Jones*, 336 Conn. 332, 376-77 (2020), *cert. denied*, 141 S. Ct. 2467 (2021). It is intended to achieve the same "tactical advantage in the Sandy Hook Lawsuits" that the previous

20

"classic bad faith [bankruptcy] filings" were calculated to achieve. *In re InfoW, LLC*, Case No.

22-60020, ECF No. 50, Mot. to Dismiss of U.S. Trustee, at 2 (Bankr. S.D. Tex. Apr. 29, 2022).

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just

costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Bank

of New York v. Consiglio*, 2017 WL 4948069, at *5 (D. Conn. Nov. 1, 2017) (Haight, J.)

(awarding removal fees for removal attempted under § 1446(c)(1)). "Absent unusual

circumstances, courts may award attorney's fees under § 1447(c) only where the removing party

lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*,

546 U.S. 132, 141 (2005). However, "[s]uch an award may be made without a showing of bad

faith or frivolity, and deciding whether to make the award requires consideration of the overall

nature of the case, circumstances of the remand, and effect on the parties." *Consiglio*, 2017 WL

4948069 at *5 (citing *Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917, 923–24 (2d

Cir. 1992)).

This removal is the latest episode in a long train of bad-faith litigation misconduct—a

fact that this Court should consider when deciding whether to award costs and fees. The trial

court found (and the Connecticut Supreme Court agreed) that "the discovery in this case has

been marked with obfuscation and delay on the part of the [Jones] defendants," noting they had

"disregarded discovery deadlines on multiple occasions, continue[d] to object to. . . discovery"

already ordered, "and failed to produce that which is within their knowledge, possession, or

power to obtain." *Lafferty*, 336 Conn. at 374 (internal quotation marks omitted). The Connecticut

Supreme Court found that Jones' actions created "a whole picture of bad faith litigation

misconduct." Id. at 377. Since the case returned to the trial court and regular discovery opened,

the defendants have continued their strategy of obstruction and delay. They ultimately were

defaulted for their obstruction and repeated refusal to follow court orders. Now, on the eve of

trial, with jury selection already underway, they seek to delay further by removing to this Court.

They are expecting that it will take this Court at least a month to adjudicate the remand, and that

they will then be able to seek a delay of the Connecticut Superior Court trial date. This Court

should act to deter such abuses and award the families just costs and actual expenses, including

attorney's fees, under 28 U.S.C. § 1447(c).

## IV.    CONCLUSION

For these reasons, the families respectfully request that this Court enter an order (i)

remanding the actions back to the Connecticut Superior Court under 28 U.S.C. § 1452(b), or

alternatively abstaining from hearing this proceeding in favor of the Connecticut Superior Court

under 28 U.S.C. § 1334(c)(1); (ii) awarding the families the payment of just costs and actual

expenses, including attorney fees, in the prosecution of this motion under 28 U.S.C. § 1447(c);

and (iii) such further relief as justice requires.

Respectfully submitted this 3rd day of August, 2022 at Bridgeport, Connecticut.

By:    /s/ *Alinor C. Sterling*
          Alinor C. Sterling (Fed. Bar No. ct17207)
          Christopher M. Mattei (Fed. Bar No. ct27500)
          Koskoff, Koskoff & Bieder PC
          350 Fairfield Avenue
          Bridgeport, CT 06604
          Telephone: (203) 336-4421
          Facsimile: (203) 368-3244
          Email: asterling@koskoff.com
                   cmattei@koskoff.com
          *Counsel for the Plaintiffs*[13]

By:    /s/ *Eric Goldstein*
          Eric Goldstein (Fed. Bar No. ct27195)
          Jessica M. Signor (Fed. Bar No. ct30066)
          Shipman & Goodwin LLP
          One Constitution Plaza
          Hartford, CT 06013
          Telephone: (860) 251-5000
          Facsimile: (860) 251-5218
          Email: egoldstein@goodwin.com
                   jsignor@goodwin.com
          *Counsel for the Individual Plaintiffs*[14]

---

[13] Koskoff, Koskoff & Bieder represents all of the plaintiffs, including Richard M. Coan solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini.

[14] In connection with this proceeding, Shipman & Goodwin LLP represents David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos Mathew Soto, Jillian Soto, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Individual Plaintiffs").

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 3, 2022, a copy of foregoing Emergency Motion for

Remand was filed electronically and served by mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system or by First Class mail to anyone unable to accept electronic filing as indicated on

the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF

System.

<u>/s/ *Alinor C. Sterling*</u>
ALINOR C. STERLING
CHRISTOPHER M. MATTEI

<u>/s/ *Eric Goldstein*</u>
ERIC GOLDSTEIN
JESSICA M. SIGNOR