# EXHIBIT A

```
UWY-X06-CV18-6046436-S     :  SUPERIOR COURT
ERICA LAFFERTY, ET ALS.,   :  COMPLEX LITIGATION
v.                         :  AT WATERBURY, CONNECTICUT
ALEX EMRIC JONES, ET ALS.  :  MARCH 30, 2022
```
```
UWY-X06-CV18-6046437-S     :  SUPERIOR COURT
WILLIAM SHERLACH, ET AL.,  :  COMPLEX LITIGATION
v.                         :  AT WATERBURY, CONNECTICUT
ALEX EMRIC JONES, ET ALS.  :  MARCH 30, 2022
```
```
UWY-X06-CV18-6046438-S     :  SUPERIOR COURT
WILLIAM SHERLACH, ET AL.,  :  COMPLEX LITIGATION
v.                         :  AT WATERBURY, CONNECTICUT
ALEX EMRIC JONES, ET ALS.  :  MARCH 30, 2022
```


                BEFORE THE HONORABLE BARBARA N. BELLIS, JUDGE


A P P E A R A N C E S :


     Representing the Plaintiffs:
          ATTORNEY CHRISTOPHER MATTEI
          ATTORNEY MATTHEW BLUMENTHAL
          ATTORNEY ALINOR STERLING
          Koskoff Koskoff & Bieder
          350 Fairfield Avenue
          Bridgeport, CT  06604

     Representing the Defendants, Alex Emric Jones; Infowars,
       LLC; Free Speech Systems, LLC; Infowars Health, LLC;
       Prison Planet TV, LLC:
          ATTORNEY CAMERON ATKINSON
          Pattis & Smith, LLC
          383 Orange Street, #1
          New Haven, CT  06511

     Representing the Defendants, Genesis Communications
       Network, Inc.:
          ATTORNEY MARIO CERAME
          Brignole, Bush & Lewis
          73 Wadsworth Street
          Hartford, CT  06106

                              Recorded By:
                              Jocelyne Greguoli
                              Transcribed By:
                              Jocelyne Greguoli
                              Court Recording Monitor
                              400 Grand Street
                              Waterbury, Connecticut 06702

1      THE COURT:  All right.  Good afternoon,

2   everyone.  This is Judge Bellis and we are on the

3   record in the three consolidated <u>Lafferty versus</u>

4   <u>Jones</u> matters.  Lead docket number Waterbury 18-

5   6046436.

6      Before I have counsel identify themselves for

7   the record, I noted that there was no objection to

8   the request from the media to tape the matter, so

9   that is noted and that can commence and so I'll -- I

10  have a few housekeeping matters of my own, but before

11  I address that, I'll have plaintiffs' counsel please

12  identify themselves for the record and then defense

13  counsel.

14      ATTY. MATTEI:  Good afternoon, Your Honor.

15  Chris Mattei on behalf of the plaintiffs, joined by

16  my colleagues, Alinor Sterling and Matt Blumenthal.

17      ATTY. ATKINSON:  Good afternoon, Judge.  Cameron

18  Atkinson from Pattis and Smith on behalf of the Jones

19  defendants.

20      ATTY. CERAME:  Good afternoon, Your Honor.

21  Mario Cerame of Brignole, Bush and Lewis for Genesis

22  Communication Network, Incorporated.

23      THE COURT:  Good afternoon, everyone.  So my

24  first housekeeping matter was, Attorney Cerame, I

25  know you had one issue, but I wasn't sure if you

26  wanted to address it today before we have our hearing

27  or if you wanted to address it at the next status

1    conference which is fine with the Court.  Did you

2    have a preference?

3         ATTY. CERAME:  Yes.  I -- I was hoping to mark

4    it off for now.  Principally, the issue -- For two

5    reasons.  Number one, fact witness discovery is not

6    done and so I don't think we can properly move it

7    until fact witness discovery is done.  I identified

8    the reason for that in the motion.  And secondarily,

9    there is a hope that things will resolve, so I would

10   --

11        THE COURT:  All right.

12        ATTY. CERAME:  -- just mark it off for now and I

13   hope that that will -- that -- that we'll be able to

14   proceed after fact witness discovery is done or

15   withdraw, one or the other.

16        THE COURT:  All right.  So you're referring to

17   your motion to withdraw appearance.  So that will be

18   on the very short list of items that we carry -- will

19   carry over without addressing it.  So I will keep

20   that on the list and when you have a definitive

21   answer, you'll let me know, but I understand that it

22   won't be addressed at the next status conference.

23        ATTY. CERAME:  Yes, Your Honor.  Thank you.

24        THE COURT:  So Attorney Mattei, are you arguing

25   for the plaintiffs today?

26        ATTY. MATTEI:  Yes, Your Honor.

27        THE COURT:  And Attorney Atkinson, are you

1      arguing for the Jones defendants?

2         ATTY. ATKINSON:  Yes, Your Honor.

3         THE COURT:  And Attorney Cerame, I don't want to

4      leave you out.  That's always my fear.  Are you going

5      to look to be heard today on these issues or are you

6      just a bystander?

7         ATTY. CERAME:  I think I -- We do not have any

8      skin in the game, Your Honor.  I think it's best for

9      us to be a bystander.

10         THE COURT:  Okay.  I'm not sure that it's

11     necessary to say this, but I am going to say it

12     anyway before I mute myself and let everyone take

13     over.  But this -- The argument today is on the

14     plaintiffs' motion for sanctions regarding Mr. Jones'

15     failure to appear for his depositions and then the

16     Jones defendants' objections thereto.  We're going to

17     confine ourselves to that argument, so I'm not

18     looking -- I don't want to hear anything about

19     settlement offers.  I don't want any -- You know,

20     this isn't a press conference.  This is formal

21     argument of a motion, so I don't know that I needed

22     to say it, but I want to confine ourselves to the

23     proper argument that's before the Court today.

24        So my first question before I turn to Attorney

25     Mattei and mute myself is:  Attorney Mattei, are you

26     presenting any new evidence today or is this solely

27     argument?

1          ATTY. MATTEI:  Your Honor, we don't intend to

2     present any evidence during the hearing today.  We

3     would ask that the Court accept as evidence the

4     exhibits that we've attached to our pleadings and

5     also the exhibits that the Jones defendants attached

6     to their pleadings in connection with this motion.

7     That, we think, is the record and -- and should be

8     sufficient for the Court to make any findings it

9     needs to make.

10          THE COURT:  All right.  Well, it's -- The way

11     I'm looking at it, it is already part of the Court

12     record by way of being attached as exhibits to the

13     motions.

14          And so, Attorney Atkinson, please, the same

15     question to you:  Are you presenting any new evidence

16     today or are we proceeding on what's been submitted

17     to date?

18          ATTY. ATKINSON:  Your Honor, as far as what

19     we're prepared to do today, we were proceeding on

20     what's been submitted.  I would just note for the

21     record that -- that if you -- your intention is to

22     take up the motion for contempt today, we would

23     request additional law time to prepare witnesses for

24     -- to decide whether we're preparing witnesses for

25     that sort of a hearing.

26          THE COURT:  That -- That is what is down today.

27     What is down today, which is clear, is the

 1     plaintiffs' motions -- motion for sanctions which

 2     request different relief including contempt and other

 3     items and your objections thereto, so I am prepared

 4     to proceed today because that is the clear agenda

 5     that we all had.

 6         What I think would be helpful to the Court would

 7     be during plaintiffs' argument, if plaintiffs can

 8     outline the relief that they're seeking and then if

 9     the defendants can respond in kind to each of the

10     different areas of relief that the plaintiff is

11     raising with the Court.  That would be helpful.

12         So at this point, I'm going to mute my

13     microphone and turn the floor over to Attorney Mattei

14     for his argument.

15         ATTY. MATTEI:  Thank you, Your Honor.  Your

16     Honor, I think the Court is pretty well apprised of

17     the facts that have been developed last week and in

18     our pleadings here, so I don't want to belabor what

19     was presented to the Court last week while we were in

20     Texas preparing to take Mr. Jones' deposition.  I --

21     I would just say that in terms of the orders that the

22     Court entered last week directing Mr. Jones to appear

23     for his deposition, both on March 23rd and then

24     subsequently on March 24th, we believe that the

25     record establishes that those orders were clear,

26     direct; that counsel for the defendants acknowledged

27     an understanding of those orders; and then later on

1    the record of Mr. Jones' deposition on March 24th

2    conceded that Mr. Jones himself understood that those

3    orders required him to attend his deposition and that

4    he had elected not to.

5        I also -- And so it -- When it comes to the

6    initial issue of whether the Court entered clear

7    orders directing Mr. Jones to appear, we think that

8    that has been clearly established.  With respect to

9    Mr. Jones' willful disregard of the Court's orders,

10    we think the circumstances laid out in your pleadings

11    establish that Mr. Jones did so willfully and there

12    are several key factors, I think, to keep in mind.

13    They're -- Number one being counsel's own concession

14    on the record that Mr. Jones understood he was

15    required to be at his deposition and had declined to

16    show; the fact that the Court had given Mr. Jones

17    multiple opportunities to present evidence to support

18    a finding that he should be excused from attending;

19    and that the Court had found he had failed to do

20    that; and then of course Mr. Jones' appearance on his

21    show over the course of March 21st, 22nd, by way of

22    reporting on March 23rd, an apparent disregard of his

23    own doctor's orders, if in fact, that's what his

24    orders -- his doctors instructed him to do and

25    clearly showing an ability to appear for deposition

26    had he wished to comply with the Court's orders.

27        Getting to the -- the Court's request that we

1    focus on the relief that we're seeking, we are asking

2    essentially for the Court to set conditions that will

3    coerce Mr. Jones to appear for his deposition.  What

4    we want more than anything else is for Mr. Jones to

5    sit for his deposition which is why the relief that

6    we've requested is conditional on him doing that.

7        So for example, we've requested that the Court

8    instruct the jury at the hearing in damages that it

9    should draw an adverse inference against Mr. Jones on

10   any issue relating to damages in light of his refusal

11   to be deposed in this case and that the Court enter

12   those findings, but withdraw that order should Mr.

13   Jones appear for his deposition.  We've asked the

14   Court to order that Mr. Jones will not be permitted

15   to present any evidence -- affirmative evidence at

16   the hearing in damages should he fail to appear for

17   his deposition.  We've asked the Court to incarcerate

18   Mr. Jones until he purges his contempt and we think

19   that that type of sanction is required here given the

20   -- the long trail of conduct Mr. Jones has engaged in

21   during the course of this case in order to induce him

22   to comply with the Court's order and we've asked the

23   Court to impose a fine on a daily basis up until the

24   time Mr. Jones purges his contempt, which fine will

25   revert to Mr. Jones when he does submit to

26   deposition.

27        So all of the relief that we've -- we've

1    requested, we think is in line with requiring Mr.

2    Jones to purge himself of his contempt and in line

3    with the -- the main goal here which is just to

4    change Mr. Jones' calculus.  It seems to us that Mr.

5    Jones has made a deliberate decision that he would

6    rather suffer the contempt of the Court than expose

7    himself to deposition and so what we've tried to do

8    in fashioning the relief we've requested is change

9    that calculus to make it clear to Mr. Jones that the

10   penalties that will accrue to him as a result of his

11   further non-compliance are not worth it and that he

12   should sit for deposition in order to avoid them.

13        So -- And then of course, Your Honor, we've

14   asked for the -- the costs and fees incurred by the

15   plaintiffs in their attempt to take Mr. Jones'

16   deposition and then in their attempts to brief to the

17   Court why he should be required to sit for his

18   deposition last week and we've presented those costs

19   and fees in our motion.

20        So those are the different components of the

21   relief that we are seeking.  Again, all of which we

22   think are reasonably designed to compel Mr. Jones to

23   comply with the Court's orders to sit for his

24   deposition and reflect the seriousness of the

25   violation that he -- that he committed last week.

26        You're muted, Judge.

27        THE COURT:  Trying to be polite.  I had a

1    question.  Am I correct in that the specifics with

2    respect to the attorney's fees and costs that you're

3    claiming and the specifics with respect to the

4    adverse inferences and preclusions of ever --

5    evidence, the specifics were not in your original

6    motion, but in your reply brief that was filed today?

7         ATTY. MATTEI:  Correct, Your Honor.  Correct.

8         THE COURT:  All right.  So I think as a matter

9    just of fundamental fairness that because costs and

10   fees and the adverse inferences and preclusions of

11   evidence were requested in the original motion that

12   you filed and then requested in the new motion for

13   sanctions, but there were no specifics, that I can

14   expect Attorney Atkinson to address overall the

15   topics of whether costs and fees should be awarded or

16   whether there should be any adverse inference or

17   evidence preclusions, but if the Court does believe

18   either or both are in order, any specifics would be

19   held to another day because that -- the specific

20   information on the amounts and the details were not

21   filed until your reply brief today and I don't think

22   that's sufficient time for the Jones defendants to

23   respond.

24       ATTY. MATTEI:  One -- One note on the specifics,

25   Your Honor, with respect to the factual findings,

26   what -- what we tried to do in our reply was

27   articulate factual findings relating to Mr. Jones'

1    non-appearance, but because the facts that will be

2    presented at trial are not yet specifically known,

3    what we've indicated is that or what we've asked for

4    is for an adverse inference instruction specific to

5    issues that are later presented at trial on the

6    question of damages.

7         So in some ways, it's -- it's really impossible

8    for us to articulate with -- with precision what

9    inferences the jury would be asked to draw.  We've

10   kind of set out a category where we expect there to

11   be multiple facts presented at trial, but anyway, I

12   just wanted to explain why we did it that way.

13        THE COURT:  All right.  But in -- In any event,

14   if Mr. Jones produces himself for a deposition, that

15   issue on the adverse inferences and evidence

16   preclusion would not need to be addressed, correct?

17        ATTY. MATTEI:  Correct, Your Honor.

18        THE COURT:  Did I interrupt you?

19        ATTY. MATTEI:  That's all I have, Judge.

20        THE COURT:  Oh, okay.

21        ATTY. MATTEI:  Unless you have any questions.

22        THE COURT:  I do not besides the ones that I

23   asked.

24        Attorney Atkinson?

25        ATTY. ATKINSON:  Yes, Your Honor.  Thank you.

26   If -- I would ask the Court's indulgence to bear with

27   me as I have a bit of a shaky internet connection

1   today.

2       Your Honor, at the outset, Mr. Jones recognizes

3   that the plaintiffs have a right to take his

4   deposition.  He recognizes that he has to sit for one

5   in this case.  He sat for three, by my account, in

6   cases relating to the Sandy Hook litigation in Texas.

7       As our motions and papers have indicated, what

8   has occurred here is he's ultimately listened to his

9   doctor's advice.  There are two critical points that

10  I -- I think bear without hyperbolizing all of them

11  in the world.  First, initially and today, there was

12  an uncontroverted record before this Court and there

13  still is that Mr. Jones' doctors thought his

14  conditions were serious enough to require emergency

15  medical care and that they rendered precautionary

16  advice that included a recommendation that he go to

17  the emergency room immediately.  Mr. Jones had --

18      THE COURT:  Attorney Atkinson, I have a question

19  in that regard.  When you say uncontroverted record,

20  you're not suggesting to the Court that the Court had

21  to accept the evidence that was submitted as opposed

22  to evaluating the evidence to determine if it was

23  credible, genuine, reasonable, and the like?

24      ATTY. ATKINSON:  Not at -- at all, Your Honor.

25  I'm not in any way suggesting to you not to do your

26  job as a judge.  That -- That would be crazy, in my

27  view.  What I am telling -- suggesting to you is --

1    is what has been presented to you shows without a

2    shadow of a doubt that Mr. Jones' doctors, the people

3    that he has sought his medical attention from, were

4    making these recommendations and that that kind of

5    leads into where I -- where I was going.

6         Mr. Jones had no desire to go to the emergency

7    room and I think most of us would share his lack of

8    enthusiasm for going to the emergency room.  What we

9    had happen here was it took some serious persuading

10   for him to recognize the seriousness of his

11   condition, to follow his doctor's advice to avoid

12   stress until they cleared him to incur it again.

13        Second -- The second point that I think bears

14   emphasizing is Mr. Jones has never sought to

15   indefinitely postpone his deposition or to escape it

16   entirely in this case.  All he sought is to postpone

17   it temporarily until his doctors cleared him to sit

18   for it.  A deposition is a stressful undertaking and

19   with all due courtesies to my adversaries' accolades,

20   they are experienced attorneys of the bar.  They've

21   had a long -- long and storied careers.  It's a

22   stressful undertaking to go through two consecutive

23   days of depositions --

24        THE COURT:  So Attorney Atkinson, I hear what

25   you're saying.  I truly do.  On the one hand, though,

26   you're telling me that he sat for depositions in the

27   past so he -- it's not like he's a neophyte at

1    depositions and there was nothing in the record to

2    suggest either that the doctor that said don't attend

3    the deposition even knew what a deposition was and

4    there was nothing -- no evidence that was submitted

5    from Mr. Jones or from anyone else that said it would

6    be stressful or that he found it stressful or that

7    the stress would exacerbate or endanger his health.

8        I just want to make sure that we have a clear

9    record.  I hear what you're saying though.  I do.

10    Continue.

11        ATTY. ATKINSON:  And I -- I -- I think that goes

12    to where I'm heading, Your Honor, is -- and I -- I

13    don't mean to belabor the point or challenge your

14    earlier statement, but this is the reason why we

15    stated in our motion papers that Mr. Jones does not

16    waive his rights under Quin -- the Quin -- the Cooley

17    case to have an opportunity to present evidence as to

18    these issues.

19        Again, I'm not going to challenge your ruling on

20    that, but I -- I do want to make the record clear as

21    to that.  This Court should not hold Mr. Jones in

22    contempt.

23        He -- There was a carveout to Your Honor's order

24    of if he experienced escalating symptoms that

25    required the need -- required him to be hospitalized,

26    that he would not need to attend his deposition.  As

27    I --

1          THE COURT:  So let me stop you there, Attorney

2    Atkinson.  I don't -- No evidence was submitted to

3    the Court after that order.  There's no evidence

4    whatsoever that there were -- and I believe my exact

5    language was escalating symptoms such that he was

6    hospitalized because, of course, it would be

7    unreasonable for the Court to order anyone to attend

8    a deposition when a medical professional -- a valid

9    medical professional actually admitted him to the

10   hospital, but I never was given any evidence that

11   suggested he had escalating symptoms such that he was

12   hospitalized and that was the only carveout.  I think

13   we would all agree that it would be not a good thing

14   to -- to require someone who's hospitalized to attend

15   a deposition.

16          ATTY. ATKINSON:  I --

17          THE COURT:  Do you understand differently?  Do

18   you understand that there was actual evidence

19   submitted to the Court that he developed escalating

20   symptoms such that he was hospitalized?

21          ATTY. ATKINSON:  No, Your Honor, and what -- not

22   -- again, not to belabor the point, but the -- this

23   is why we believe additional time is necessary.  The

24   -- The plaintiffs' motion for contempt was filed on a

25   Friday.  It's incredibly hard to gather evidence in

26   three to four days and we would -- we would submit

27   that alone is enough for a reason for more time to

1      enable us to determine whether such evidence exists

2      that we -- in a form that we can present it to you.

3          It's -- In -- In our view, the Court's orders

4      created a difficult choice for Mr. Jones.  He was

5      advised that if he incurred stress, that the

6      consequences to his health could prove disastrous.

7      While we freely concede he did not listen to the

8      initial recommendations that his doctors made and, as

9      I stated earlier, it took some persuading to get him

10     to take this seriously, he ultimately did listen to

11     his doctor's directives.  The Court's order put him

12     in an extraordinary difficult -- extraordinarily

13     difficult position in that --

14         THE COURT:  Attorney Atkinson, can I --

15         ATTY. ATKINSON:  -- in that --

16         THE COURT:  Can I please get back to an earlier

17     point that you made with respect to the submitting

18     additional evidence?  So this hearing today was

19     scheduled one week ago.  It was scheduled one week

20     ago today.  I never received any motion for

21     continuance, formally or informally, from any party

22     indicating that more time was needed to arrange for

23     witness testimony or other -- other evidence.  If I

24     had, I would have ruled on it.

25         So I just want to make sure the record is clear

26     on that.  And I did notice, much to my surprise, and

27     I was delighted that the defendants' briefs, which

1    were due yesterday at 10 o'clock, were actually filed

2    a full day early, so the briefs were --

3        ATTY. ATKINSON:  Your Honor, that --

4        THE COURT:  -- early.  I was then hoping that

5    plaintiffs' counsel would file theirs early, but they

6    just made their deadline, but continue with your

7    argument.

8        ATTY. ATKINSON:  Your Honor, that may have been

9    due to me misreading the deadline for the briefs and

10    I may have inadvertently moved it up a day earlier.

11    I can represent with full confidence to the Court

12    that I was working as if the deadlines for the brief

13    were the ten -- 10 o'clock before I submitted it.

14        THE COURT:  All right.  Well, you did a terrific

15    job and I think we all probably worked over the

16    weekend, but in any event, the deadline was actually

17    yesterday, but -- for -- for the brief and again, no

18    continuance request, but I did -- I did interrupt you

19    and I'll give you as much time as you need, so

20    continue.

21        ATTY. ATKINSON:  Thank you, Your Honor.  Turning

22    to -- So just to wrap up, we -- we believe the Court

23    should not hold Mr. Jones in contempt, but if you

24    decide to hold him in contempt, the -- the first --

25    the most important consideration that we would ask

26    you to take into account is not to issue an arrest

27    warrant for Mr. Jones.  It is clear, at least before

1          -- before -- in the record before you, in our view,

2          that Mr. Jones has experienced some health problems.

3          We would submit that issuing an arrest warrant for

4          Mr. Jones procuring his incarceration would only

5          serve to exacerbate those health concerns and that

6          alone should counsel against the issuance of that --

7          that warrant.

8               And also, as I stated earlier, Mr. Jones

9          recognizes that he must give a deposition in this

10         case.  He recognizes that he must sit for one.  An

11         arrest warrant would be a step -- would be a drastic

12         step towards procuring his attendance.

13              With respect to sanctions as to what -- what --

14         pardon me, Your Honor.  I'm consulting my notes for a

15         second.  With respect to the adverse inferences, Your

16         Honor, if he doesn't depose, I think that's a bit

17         premature at this point.  In terms of the denial of

18         an opportunity to present any evidence at trial, it

19         is -- in our view, would raise a due process concern

20         of sorts there.  We believe that, if anything, an

21         order from this Court and the escalating fines are

22         sufficient to pro -- procure Mr. Jones' attendance.

23              And then finally, Your Honor, I did want to

24         address the -- in terms of just generally not the

25         specific -- the specifics, but in terms of attorney's

26         fees and costs, I believe we cited the Berzins case

27         in our motion papers where you must make a finding

1    that he has acted -- Mr. Jones has acted in bad

2    faith.  Again, relying on the fact that Mr. Jones was

3    getting -- was listening to his doctors.  He heeded

4    his doctors, et cetera.  He's not sought to

5    permanently delay or escape his deposition in this

6    case and he forwent his deposition pending the

7    results of further medical tests.

8        Given the fact that he just went through a

9    remarkable pandemic where that -- we have all been

10   dependent on expert's advice, doctor's advice as to

11   who is at risk for what and we've deferred to those

12   recommendations, we would submit that the same wise

13   course of conduct here was to defer to that and it

14   was not an action taken in bad faith.

15       And with that, unless Your Honor has further

16   questions for me, I will rest on the papers.

17       THE COURT:  I do not.  Thank you, Attorney

18   Atkinson.

19       Attorney Mattei?

20       ATTY. MATTEI:  Just briefly in response, Your

21   Honor.  First, my own omission, I neglected to

22   mention that among the sanctions that we're seeking

23   is that should Mr. Jones appear for his deposition,

24   that he be required to appear in Connecticut and we

25   raised that in our initial motion and then again in

26   our reply.  The -- At least in their papers, the

27   defendants did not object to that and so we would ask

1    that when the Court orders his deposition, it do so

2    in Connecticut.

3         Just in response to a couple of the points from

4    Attorney Atkinson, one, on the claim that

5    incarceration at this point would only exacerbate Mr.

6    Jones' health issues, whatever they may be, there is

7    no evidence in the record as to what his current

8    health status is other than what we presented to the

9    Court as being drawn from his March 25th broadcast in

10   which we cited to his broadcast and his claim that he

11   feels like a new person after whatever purported

12   health scare he claimed to have had brought about by

13   a sinus blockage.  So there is no evidence that has

14   been presented despite ample opportunity by the

15   defendants to suggest that incarceration pending his

16   deposition would exacerbate any health problems.

17        I don't want to relitigate the evidence that was

18   previously presented to the Court on his medical

19   issues.  The Court has reviewed the letter and the

20   affidavits that were submitted by Doctor Marble and

21   Doctor Offutt and found them wanting, found the

22   initial letter submitted by Doctor Marble to -- to

23   not be credible evidence justifying Mr. Jones'

24   excusal, so as far as we're concerned, the Court has

25   already made the findings it needs to make with

26   respect to the excuses that were proffered by -- by

27   Mr. Jones and -- and Your Honor, I think that's all I

1        have in -- in reply to Attorney Atkinson.  Thank you.

2            THE COURT:  Attorney Atkinson, I'm going to give

3        you a brief opportunity to respond, although I

4        normally wouldn't, to argue again if you want on the

5        issue of the location of the deposition.  It was

6        clear to me that in all of the plaintiffs' moving

7        papers they were looking for the deposition to take

8        place in Connecticut at their offices and also, I --

9        I'm somewhat surprised that I -- I actually thought

10       that you -- whoever was arguing for Mr. Jones today

11       would come in and make some kind of offer, you know,

12       to the Court, don't -- we don't want sanctions; we're

13       willing to sit for a deposition on Monday or Friday.

14           Is that -- So if you want to address either or

15       both of those issues, you have an opportunity to.  If

16       you don't, that's fine too.  It's up to you.

17           ATTY. ATKINSON:  Yes.  I would -- I would love

18       to, Your Honor.  Mr. Jones is willing to sit for a

19       deposition.  We would ask both the Court and

20       plaintiffs' counsel to take into consideration that

21       he is unavailable during the first week of April and

22       towards the end of April.  I can reveal, as I am

23       authorized to reveal, that at the end of April he

24       will be engaged in trial prep for a case occurring in

25       Texas.  We would offer to make him available the week

26       of April 11th for a deposition if the Court orders

27       it.

1          With respect to the issue of him appearing in

2      Connecticut, that would certainly be within the --

3      the Court's province to order.  We -- We obviously

4      understand that.  We obviously understand that it

5      would present a burden to Mr. Jones to travel here

6      and one of the considerations in specific --

7      specifically that we would raise is to Mr. Jones.

8      And I am a bit reluctant to put this on the record,

9      but we understand that plaintiffs' counsel enforces a

10     fairly strict Covid protocol at their offices

11     including the wearing of masks, et cetera, something

12     that Mr. Jones is not willing to do and we would ask

13     that to be taken into consideration as well.

14          I believe that -- that's all the issues that you

15     were giving me an opportunity to address, Your Honor.

16     If I missed anything, feel free to remind me.

17          THE COURT:  Thank you.

18          All right.  So I'm going to order a transcript

19     of the following remarks and when it is prepared, I

20     will sign it and place it in the file.

21          So with respect to depositions in general, under

22     our rules of practice, particularly Practice Book

23     Section 13-29 Subsection (c) Subsection (2), the

24     plaintiffs were not required to subpoena Mr. Jones.

25     The plaintiffs properly issued a notice of deposition

26     on Mr. Jones, a defendant, which notice compelled him

27     to appear for a deposition in the county he resides

1      or within 30 miles of his residence and that was done

2      properly.

3           On Tuesday, March 22nd, the Court, after

4      argument on the record, denied the Jones defendants'

5      motion for protective order that had been filed

6      earlier that day and that had asked the Court to

7      postpone Mr. Jones' depositions which were scheduled

8      to take place on Wednesday the 23rd and Thursday the

9      24th.  The Jones defendants were given an immediate

10     opportunity to argue their motion the same day it was

11     filed and both the evidence that was submitted and

12     the argument that was made indicated that Mr. Jones

13     was remaining at home under his doctor's supervision

14     when, in fact, he was working at his studios and

15     broadcasting his show.

16          Additionally, the Court painstakingly explained

17     on the record that its in-camera review evaluating

18     the doctor's note submitted by the Jones defendants

19     revealed that the note fell far short.  Despite that

20     ruling, Mr. Jones did not appear for his deposition

21     on Wednesday, March 23rd.

22          In denying the Jones defendants' motion, the

23     Court clearly stated that while the logistics of the

24     depositions were left to the parties, the parties

25     could consider having Mr. Jones' physician on the

26     premises during the deposition.

27          On Wednesday, March 23rd, following the filing

1    of the plaintiffs' motion for order, which was filed

2    that day, and the Jones defendants' objection, which

3    was also filed that day, the Court, again on the

4    record after a hearing from counsel, ordered Mr.

5    Jones to appear for his deposition on Thursday, March

6    24th.

7         Despite these rulings from the Court, Mr. Jones

8    did not appear for his deposition on Wednesday, March

9    23rd and he did not appear for his deposition on

10   Thursday, March 24th.  Immediately following the

11   hearing on the record on March 23rd, the Court also

12   ordered Mr. Jones, in writing, to appear for his

13   March 24th deposition stating, "The defendant, Alex

14   Jones, is ordered to produce himself tomorrow for his

15   duly noticed deposition as he has not submitted

16   additional evidence for the Court to evaluate on the

17   issue of his alleged medical conditions."

18        Additionally, after the parties filed briefs

19   relating to the plaintiffs' request for a capias, the

20   Court issued a second written order on March 23rd

21   declining to issue a capias at that time, indicating

22   that Mr. Jones would be in contempt of the Court's

23   order should he not appear for his deposition on

24   March 24th and setting a briefing schedule with

25   respect to the other sanctions requested by the

26   plaintiff.

27        Furthermore, after an additional motion for

1      protective order was filed by the Jones defendants at

2      the end of the day on Wednesday, March 23rd, the

3      Court, after evaluating the motions and affidavits,

4      denied the motion in writing and made clear that the

5      Court-ordered deposition was to proceed the next day,

6      although he would be excused from the deposition if

7      he was hospitalized.  No such evidence of

8      hospitalization or, in fact, any other evidence has

9      been submitted to the Court, although the motions

10     that have been filed are replete with references to

11     Mr. Jones either broadcasting live from his studio,

12     recording shows, or calling into shows during the

13     time period in question.

14        So while the parties and counsel abided by the

15     Court-ordered deadlines with respect to the filing of

16     their briefs, Mr. Jones, as I said, did not appear

17     for his deposition on Thursday, March 24th.

18        So this hearing today is dealing with the

19     plaintiffs' motions relating to Mr. Jones' failure to

20     appear for his depositions on March 23rd and March

21     24th despite all these Court orders and Jones

22     defendants' objections thereto.

23        Now, I have to note, at this point we're maybe

24     16 or 17 weeks away from jury selection and Mr. Jones

25     has not even been deposed.  So we're four years into

26     this case and the Court has repeatedly entered new

27     deadlines for witness depositions and the newest

1    deadline, as far as I know, is April 8th in this long

2    series of modifying scheduling orders for

3    depositions.

4        I have to say that due to these repeated

5    extensions, the several prior trial dates, as well as

6    the age of the case, the existing trial date, which

7    is jury selection on August 2nd and evidence on

8    September 1st, is a firm trial date and parties and

9    counsel should plan accordingly.

10       The Court's authority here is rooted not only in

11   Practice Book Section 13-14, but the Court also has

12   inherent sanctioning power.  With respect to the

13   issue of contempt, the Court finds by clear and

14   convincing evidence that the defendant, Alex Jones,

15   willfully and in bad faith violated without

16   justification several clear Court orders requiring

17   his attendance at his depositions on March 23rd and

18   March 24th.  That is, the Court finds that Mr. Jones

19   intentionally failed to comply with the orders of the

20   Court and that there was no adequate factual basis to

21   explain his failures to obey the orders of the Court.

22       Now, while the Court has adjudicated Mr. Jones

23   in contempt, Mr. Jones himself has the ability to

24   purge the contempt and Mr. Jones is on notice that he

25   has the ability to purge the contempt and the Court

26   has the power to reduce the fines that it is going to

27   impose once the contempt has been purged as follows:

1       The contempt will be purged when Mr. Jones completes

2       two full days of depositions at the office of

3       plaintiffs' counsel in Bridgeport.  Mr. Jones is to

4       pay conditional fines of $25,000 each weekday

5       beginning on Friday, April 1st, increasing by $25,000

6       per weekday payable to the Clerk of the Court in

7       Waterbury and it will be suspended on each day that

8       Mr. Jones successfully completes a full day's

9       deposition where Mr. Jones has given all counsel a

10       minimum of 24 hours' notice of his availability to

11       sit for that particular deposition.

12       So for example, if Mr. Jones' counsel this

13       afternoon informs counsel that Mr. Jones will sit for

14       his deposition on Friday -- that's sufficient notice

15       to the parties, that's 24 hours -- and if he

16       successfully appears and sits for his deposition on

17       Friday, there will be no fine.

18       Another example:  If Mr. Jones' counsel this

19       afternoon informs counsel that Mr. Jones will sit for

20       his deposition on Tuesday, April 5th and he does so

21       successfully, the fine will be $25,000 for this

22       Friday, April 1st.  There will be no fine on Saturday

23       or Sunday and there will be a $50,000 fine on Monday

24       for a total fine of $75,000 to that point and so on.

25       The last day for the fines will be April 15th

26       and that then gives Mr. Jones an opportunity to purge

27       the contempt by producing himself for two full days

1    of deposition by April 15th.  The Court recognizes

2    that this fine, while a conditional fine, is also

3    coercive, but finds that it is reasonable and

4    necessary in this matter and again points out that

5    Mr. Jones himself has the opportunity to complete his

6    deposition and then request reimbursement of the

7    fines that the Court has imposed.

8        The Court declines to issue a capias, although

9    it recognizes that the plaintiffs may pursue that

10   with the Texas Courts if they so desire.

11       The Court also finds that the plaintiffs are

12   entitled to fees and costs in connection with the

13   cancelled depositions that was requested in earlier

14   motions and the details of which were provided in the

15   briefs that were just filed today, so as I indicated

16   earlier, for that reason, the Court will address the

17   amount of the fees and costs that will be awarded at

18   the next hearing giving the Jones defendants adequate

19   time to respond.

20       It is clear, however, that the plaintiffs here

21   simply want and are entitled to the deposition of Mr.

22   Jones and that Mr. Jones has continued to attempt to

23   deliberately disregard the Court's orders and

24   attempts to manipulate the Court process.  While

25   paying the fees and costs will reimburse the

26   plaintiffs for the costs incurred in attempting to

27   procure Mr. Jones' deposition, it is not a substitute

1     for his testimony.  As such, should Mr. Jones not

2     complete his two full days of depositions by April

3     15, the Court finds that the preclusion of evidence,

4     that is, preventing Mr. Jones from offering evidence

5     which would include calling witnesses, cross-

6     examining witnesses, and the like, and adverse

7     inferences, that is, the establishment of certain

8     facts adverse to the Jones defendants, would be an

9     order as a remedy for non-compliance, the extent of

10    which is a very significant issue and would require

11    extensive briefing and argument from counsel.

12         That is not something, hopefully, that will have

13    to be addressed because Mr. Jones has the ability by

14    April 15th to purge himself of the contempt and avoid

15    any issue, preclusion, or adverse inferences.  So if

16    and when that becomes an issue, if he has not

17    submitted to his two full days of deposition by April

18    15th, then the Court will set up a briefing schedule

19    to address issue preclusion and adverse inferences.

20    So really, it will be up to Mr. Jones.

21         All right.  So I think that concludes our

22    business for today.

23         Our next status conference, Mr. Ferraro, do you

24    have that date handy?  I know that we have to deal

25    with a motion to seal on that date.

26         THE COURT OFFICER:  That would be April 20th,

27    Your Honor.

1          THE COURT:  All right.  It will be here before

2     you know it and then we'll have a good idea at that

3     point, since it's five days after our deadline,

4     what's in store.

5          All right.  Thank you, counsel.  I want to thank

6     you, and I mean this, for your very thorough and

7     helpful briefs and your professional argument today.

8          ATTY. MATTEI:  Your Honor, thank you.  May I

9     just raise one unrelated issue?  We filed a motion on

10    consent for a commission to issue with respect to the

11    deposition of Rob Dew and since our next status

12    conference isn't until the 20th, I just wanted to put

13    that on the Court's radar because I don't expect --

14    in fact, I know there won't be any responsive

15    briefing because all parties consent, but I just

16    wanted to focus the Court on it.

17         THE COURT OFFICER:  Your Honor, I believe you

18    granted that.

19         ATTY. MATTEI:  Oh, has it been granted?  Okay.

20         THE COURT OFFICER:  I believe so.

21         ATTY. MATTEI:  Thank you.  I apologize.

22         THE COURT OFFICER:  Let me check to be sure

23    because --

24         THE COURT:  I did.  I granted it last night.

25         ATTY. MATTEI:  I hadn't seen it.  Thank you,

26    Your Honor.

27         THE COURT:  I think -- You're not the only ones

1          that have been working on the weekends and at night

2          on this --

3               ATTY. MATTEI:  Oh, I know.

4               THE COURT:  -- just so you know, so --

5               ATTY. MATTEI:  I know.

6               THE COURT:  -- Attorney Atkinson, I hear what

7          you're saying about having to file your brief.  We've

8          all been working hard.

9               ATTY. MATTEI:  Thank you, Your Honor.

10              ATTY. ATKINSON:  Your Honor, on that note, with

11         respect to any contesting of the fees and costs,

12         would -- are we allowed to file a written submission

13         as to that?

14              THE COURT:  Absolutely.  You can --

15              ATTY. ATKINSON:  Thank you.  We'll have that in

16         before April 20th and hopefully well in advance, Your

17         Honor.

18              THE COURT:  Okay.  Thank you for that.

19              And we are adjourned.  Thank you, counsel.

20              ATTY. MATTEI:  Thank you.

21              ATTY. ATKINSON:  Thank you, Your Honor.

22              ATTY. CERAME:  Thank you, Your Honor.

23              (The matter concluded.)

24

25              *                 *                 *

26

27

```
UWY-X06-CV18-6046436-S       :  SUPERIOR COURT
ERICA LAFFERTY, ET ALS.,     :  COMPLEX LITIGATION
v.                           :  AT WATERBURY, CONNECTICUT
ALEX EMRIC JONES, ET ALS.    :  MARCH 30, 2022
```

```
UWY-X06-CV18-6046437-S       :  SUPERIOR COURT
WILLIAM SHERLACH, ET AL.,    :  COMPLEX LITIGATION
v.                           :  AT WATERBURY, CONNECTICUT
ALEX EMRIC JONES, ET ALS.    :  MARCH 30, 2022
```

```
UWY-X06-CV18-6046438-S       :  SUPERIOR COURT
WILLIAM SHERLACH, ET AL.,    :  COMPLEX LITIGATION
v.                           :  AT WATERBURY, CONNECTICUT
ALEX EMRIC JONES, ET ALS.    :  MARCH 30, 2022
```

C E R T I F I C A T I O N

I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of Waterbury at Waterbury, Connecticut, before the Honorable Barbara N. Bellis, Judge, on the 30th day of March, 2022.

Dated this 30th day of March, 2022 in Waterbury, Connecticut.

_____
Jocelyne Greguoli
Court Recording Monitor