# EXHIBIT A

```
DKT NO:  X06-UWY-CV186046436-S   :  COMPLEX LITIGATION DKT

ERICA LAFFERTY                   :  JUDICIAL DISTRICT WATERBURY.

v.                               :  AT WATERBURY, CONNECTICUT

ALEX EMRIC JONES                 :  JULY 14, 2022

DKT NO:  X06-UWY-CV186046437-S


WILLIAM SHERLACH

v.

ALEX EMRIC JONES


DKT NO:  X06-UWY-CV186046438-S


WILLIAM SHERLACH

v.

ALEX EMRIC JONES
```

                          STATUS CONFERENCE

              BEFORE THE HONORABLE BARBARA N. BELLIS, JUDGE


A P P E A R A N C E S :


    Representing the Plaintiff(s):


        ATTORNEY CHRISTOPHER MATTEI
        ATTORNEY ALINOR STERLING
        ATTORNEY MATTHEW BLUMENTHAL
        ATTORNEY COLIN ANTAYA


    Representing the Defendant(s):

        ATTORNEY NORMAN PATTIS for Jones Defendants
        ATTORNEY ZACHARY REILAND for Jones Defendants
        ATTORNEY CAMERON ATKINSON for Jones Defendants
        ATTORNEY CHRISTOPHER DEMATTEO for the Jones Defendants


                            Recorded By:
                            Darlene Orsatti

                            Transcribed By:
                            Darlene Orsatti
                            Court Recording Monitor
                            400 Grand Street
                            Waterbury, CT 06702

```
 1              THE COURT:  All right.  Good morning, everyone.

 2         This is Judge Bellis; and we are on the record in the

 3         three Lafferty versus Jones matters.  Lead docket

 4         number Waterbury 18-6046436.  I'm going to ask

 5         everyone to first please make sure your devices are

 6         muted unless you're addressing the Court.  And then

 7         just as a courtesy to the Court Reporter, each time

 8         you address the Court, if you would please restate

 9         your name for the record.

10              All right.  So, starting with plaintiff's

11         counsel, please.

12              ATTY. MATTEI:  Good morning, your Honor.  This

13         is Chris Mattei on behalf of the plaintiffs.  I'm

14         joined by my colleagues today, Alinor Sterling,

15         Matthew Blumenthal and Colin Antaya.  And I think

16         that's everybody from our team.

17              THE COURT:  All right.  Good morning.  And for

18         the Jones defendants.

19              ATTY. PATTIS:  Good morning, judge.  Norm Pattis

20         here and I believe I see Cameron Atkinson, Kevin

21         Smith, Chris DeMatteo and Zack Reiland.  All from my

22         firm.  I'm not sure that I see the applicant for pro

23         hac vice, Andino Reynal.

24              ATTY. REYNAL:  Good morning, your Honor.  This

25         is Andino Reynal.  I'm on the line.  My Microsoft

26         Teams is having some trouble logging me into the

27         video.  I apologize.
```

```
 1          THE COURT:  All right.  Good morning, everyone.

 2     So again, just mute your devices if you would.  I'll

 3     do the same when someone else has the floor.  So, I

 4     have a longer than normal list of housekeeping

 5     matters to address first, and then I will, as I

 6     always do, turn it over to counsel to identify what

 7     they need adjudicated.  First though, I will deal

 8     with the defendants' objection to the media coverage

 9     today.  I know that Mr. Ferraro notified everyone

10     properly, and the defense objected.  So I will turn

11     the floor over, I assume it's you Attorney Pattis.

12          ATTY. PATTIS:  Yes.

13          THE COURT:  As Practice Book Section 111b puts

14     the burden of proving that electronic coverage should

15     not be allowed on you.  So you have the floor, sir.

16          ATTY. PATTIS:  Briefly stated, judge.  The trial

17     and the matter is the subject of extensive pretrial

18     publicity and in public interest.  We're on the cusp

19     of jury selection.  As we enter jury selection, the

20     January 6th Congressional Committee has entered into

21     a stage of public hearings, where they are attempting

22     to link the insurrectionary activities, if there were

23     any at the Capitol on January 6th to Mr. Jones and

24     other members of the so-called alt-right.

25          And in the hearing this week, Jones figured

26     prominently.  My - I'm not sure exactly what we will

27     be discussing here today, but I feel as those this is
```

1    the functional equivalent of a sidebar, where we try

2    to narrow the issues that the jury will hear and

3    reach some trial management understanding of how to

4    orderly proceed.  And my concern is that on the cusp

5    of jury selection, given the extortionary public

6    interest in the January 6th hearings, Mr. Jones'

7    prominent role in it as reported this week, and the

8    public interest in the case, publicity could

9    undermine his fair trial rights.

10       I note by way of analogy, I'm also involved in

11   defense of a man named Joe Biggs case.  His case was

12   recently postponed because – a criminal case

13   admittedly but was recently postponed because of the

14   potentially prejudicial effect of pretrial publicity.

15   So briefly stated, that's all I have, judge.  But

16   that is the basis for the objection.

17       THE CLERK:  Judge, you are muted.

18       THE COURT:  Thank you, Attorney Pattis.

19       THE CLERK:  I would just – I don't know if

20   you've noticed.  But a Mr. Dan Reed from AMOS is on.

21       THE COURT:  All right.  Thank you.

22       THE CLERK:  To address that issue if needed.

23       THE COURT:  All right.  So, I – thank you,

24   Attorney Pattis.  I haven't heard anything that

25   overrides the presumption of the open courtroom.  So

26   there's no need for me to hear from Mr. Reed or from

27   other counsel.  So I will overrule the objection and

```
 1        allow the coverage today.  We will make sure that the
 2        issues are addressed properly in voir dire when we
 3        come to that, with respect to the potential jurors.
 4            And I just also want to mention as I know you're
 5        all very experienced lawyers.  But as you know, in
 6        civil cases, during the first day that jury selection
 7        starts, the case is disabled on the internet.  So
 8        that people will not be able to - jurors, or anyone
 9        for that matter, will not be able to go on the
10        internet and access the documents for just the reason
11        that you mentioned, Attorney Pattis.  So, there is,
12        as in know, Mr. Ferraro mentioned. There was a
13        request by AMOS to film the trial.  I assume that you
14        will want time to object to that.  So would -
15            ATTY. PATTIS:  Judge, I can't - you know, I -
16        aside from the potential impact on jurors, which can
17        be addressed through court inquires and notes and so
18        forth, we're not going to file an objection to that.
19        And so if the Court's - we don't need additional time
20        to make that evaluation.
21            THE COURT:  All right.  Attorney Mattei, what
22        about your side?
23            ATTY. MATTEI:  Is it with respect to the filming
24        of the trial, judge?  Yeah.  We don't take any
25        position at this time with respect to that.  It would
26        be useful to us in conversations with our clients to
27        have a little bit more detail on what that will look
```

1    like.  And so we can either do that directly, or

2    through the Court.  But we expect to be able to have

3    a position for the Court within a matter of a couple

4    of weeks.

5        THE COURT:  So you want time to object or just

6    to go through the parameters?

7        ATTY. MATTEI:  I think the parameters mainly,

8    judge.

9        THE COURT:  All right.

10       ATTY. MATTEI:  In order to fashion a position.

11       THE COURT:  All right.  So I think then what

12   we'll do – I mean, the obvious things.  You can't

13   film jurors.  You can't film jury selection.  That's

14   laid out very clearly in the Practice Book.  But I do

15   agree that we need some more specifics.

16       So, my next item on the list was actually for

17   another status conference, which is going to

18   definitely be needed before our first day of jury

19   selection.  So I would then invite Mr. Reed or

20   whoever it is for AMOS to participate that day, and

21   then counsel, we can all – I have some of my own

22   guidelines, which I will share with you all in

23   advance of the next status conference.  But you could

24   also weigh in because I would certainly welcome any

25   thoughts anyone has on that issue.  Okay.  So I know

26   Mr. Ferraro, or at least I had mentioned to Mr.

27   Ferraro that I was looking at July 26th at 10 a.m.

```
1          for our next status conference.  Is that an

2          impossibility for anyone today?

3              ATTY. MATTEI:  Your Honor, for the plaintiff's

4          that would be fine with us.

5              THE CLERK:  Actually your Honor, it was 11 a.m.

6              I'm sorry, your Honor, it was 11 a.m.  You have

7          an event at 10 already on that day.

8              THE COURT:  Okay.  So I misspoke.  I'm sorry, 11

9          a.m.  Attorney Pattis, does that present

10         insurmountable obstacles for you?

11             ATTY. PATTIS:  As you state it, impossible or

12         insurmountable, no.  I will surmount to the

13         difficulties that are apparent.

14             THE COURT:  Okay.

15             ATTY. PATTIS:  But I will deal with it.

16             THE COURT:  All right.  So we have –

17             ATTY. REYNAL:  Your Honor, I will be in trial on

18         July 26th in Austin, Texas, but I'm sure Mr. Pattis

19         will cover everything.

20             THE COURT:  All right.  We haven't quite

21         admitted you yet, so I'm not – so what we'll do is

22         we'll have our next status conference at July 26th at

23         11 a.m., and I will leave – I will – Ron will remind

24         me to share my protocol with counsel.  And certainly,

25         I would just – you know, encourage counsel to discuss

26         the parameters if there's something you can agree on,

27         I would be really happy with that.
```

1   But if you can't, we'll address it and we'll do

2 it on the record and we'll invite Mr. Reed at that

3 time, so that we're all clear on what is appropriate

4 and what is not appropriate.  So we'll put that on

5 the agenda for that date as well, Ron.

6   ATTY. PATTIS:  Judge, will you expect

7 participation of all trial counsel on that day, or

8 will I -

9   THE COURT:  No.  Just - no.  No.  I just need -

10   ATTY. PATTIS:  And judge, we are absent one

11 lawyer today.  Mark Rademacher was hospitalized

12 Monday and is undergoing some treatment.  He would

13 otherwise be here.  I will certainly inform him of

14 any order that you - that he needs to know - well,

15 any order that you issue here, but I would ask you to

16 excuse his absence.  It simply is what it is.

17   THE COURT:  Right.  Yeah.  No, I - just for the

18 trial management conference today, I wanted anyone

19 who is participating in the trial.  But for the next

20 status conference, not so.

21   ATTY. MATTEI:  Your Honor if I may.  Just one

22 related note to what Attorney Pattis was just

23 mentioning.  We've been joined by my colleague Sarah

24 Steinfeld, who joined late because she was having

25 some technical difficulties as well.  We also have

26 one attorney, your Honor, who - Josh Koskoff, who is

27 on long scheduled flight this morning that he tried

1     to change in order to be present.  He wasn't able to.

2     We're not yet sure whether he's going to be having an

3     active role at trial or on jury selection, although

4     he very well may.  And so, we just wanted to note his

5     absence, mindful of the Courts directive, that

6     everybody appeared today.  It simply wasn't possible

7     given his travel plans to reschedule.

8         THE COURT:  All right.  So what I'll do is, I

9     will as I always do, order a copy of the transcript

10    and I put it in the file.  And then certainly

11    Attorney Pattis, you can give it to Attorney

12    Rademacher and Attorney Mattei, you can give it to

13    Attorney Koskoff.

14        ATTY. MATTEI:  Thank you.

15        THE COURT:  All right.  So, the motions in

16    limine, which I don't know if they've all been filed

17    yet, or most of them have been filed.  I'm looking to

18    have any objections to the motions in limine, or any

19    responses outlining any agreements to the motions in

20    limine within ten days.  So by July 25th.  And then

21    replies, if any, by August 1st.  All right.  And I'll

22    put that – is that going to be impossible for anyone

23    to do?  I tried to be as generous as I could with the

24    time.  And it doesn't look like there's a tremendous

25    amount of motions in limine.  So I thought that was

26    manageable.  Is there anyone that has a major problem

27    with that?

9

ATTY. PATTIS:  Only my wife, judge, but that's
my problem.  And Attorney Mattei and I have been
dealing with issues - and Sterling, on a rolling
basis.  We may be able to reach agreements.  We have
one outstanding motion.  Mr. Rademacher was preparing
it.  I'd asked everybody to get me drafts of stuff on
the 11th.  He went in.  It was unclear that he was
coming out.  I think we've requested in writing
somewhere to have until Monday to file it if we do.
And based on my discussions with Mr. Mattei, we may
not.  So that - we will live with this schedule.

THE COURT:  I'm sorry, you might need until
Monday to file one more motion in limine.  Is that
what I'm understanding?

ATTY. PATTIS:  Yes.

THE COURT:  That's fine if that's the case.  All
right.  That's fine.  That will still - if there is
one that's filed on the 18th, that would still give
you a solid week to file an objection.  So I don't
think that should be a problem.  All right.  With
respect to the deposition transcripts.  I take the
blame, as I neglected to specify in my order what I
was envisioning, which was the line-by-line
designation.  So I'll make that order right now.
Given that, and I know you've had some discussions
based on what I saw in the filings, do either of you
have a proposal on how to deal with the line-by-line

1     designations and objections and such?  Can you give
2     me a proposal?
3         ATTY. PATTIS:  I think we both took different
4     positions on your order.  But we – and Chris, I'm
5     sure – Attorney Mattei will correct me if I misstate
6     this.  I believe we're going to be given designations
7     of what the plaintiff's contemplate using on a
8     rolling basis.  And we have thus far received either
9     eight or ten deposition's that are so designated.  I
10    believe our – and then we would review those and
11    respond.  And I think, and Chris forgive me if I
12    misstate this.  I believe the agreement was we would
13    request until ten days after the receipt of the last
14    deposition to get our objections to those – if any,
15    to those designations to you, judge.
16        ATTY. MATTEI:  Your Honor, so that was not so
17    much as an agreement as it was defense counsels'
18    suggestion on if his view of the order was correct,
19    which I think his view, as you now indicate was
20    correct.
21        THE COURT:  Well, my order could have been
22    clearer.  So I just don't want – what I want to avoid
23    is getting slammed with thousands of objections and
24    scrambling to try to rule on them.  So, can you give
25    me your outside proposed date on when you will – how
26    many transcripts are we talking about?  Because I
27    know Attorney Pattis said you've already done eight

1    by ten.

2        ATTY. MATTEI:  Yeah.  I think we've given about

3    11.  We probably have, you know, there's some that we

4    won't end up offering at all that we originally

5    listed, in order to be safe.  I mean, I think we

6    probably have another ten to 15 I would say.  I will

7    note just for the Courts planning purposes, that of

8    the material that we've designated so far, there

9    really aren't that many objections.

10        So I don't think under any circumstance you're

11   going to get slammed.  But it does take some time for

12   us to review these.  So I would say if we can get our

13   designations, all outstanding designations, to

14   defense counsel within a couple of weeks.  And then

15   we have our meet and confer and present all

16   objections to the Court within a couple weeks

17   thereafter.  That would take us to mid-August.  Does

18   that give you enough time, judge?  And is that okay

19   with you, Norm?

20        ATTY. PATTIS:  You know, this is an office-wide

21   project for us because of the number of depositions.

22   We've got some folks in and out of the office.  But

23   we'll get it done.  Mid-August gives us about three

24   weeks.  I mean, to get all this done, maybe four.  I

25   think that is – I think that's doable, Attorney

26   Mattei and Judge Bellis.  And certainly if something

27   extraordinary occurred, we would approach the Court.

1    But I understand the Courts concern about not wanting

2    to be doing this the night before a witness is going

3    to testify.  We will certainly get it done before

4    evidence begins and we will aim to get it done by

5    mid-August.  I'd like a generous mid-August, 18th or

6    19th, as opposed to the 12th or the 13th.  But yeah,

7    there are a lot of depos there.

8        ATTY. MATTEI:  I mean, look, it would be - since

9    we're doing this on rolling basis, it would be great

10   if we could be meeting over the objections as we go.

11   That would obviously be most efficient.

12       THE COURT:  So today's July 14th.  I'd like to

13   get the objections to me to start ruling on them.

14   I'll go with the August 18th.  That's fine.  So that

15   gives you four or five weeks to make it work.

16       ATTY. PATTIS:  Thank you.

17       THE COURT:  Do you think I can just put an order

18   in with that outside deadline of any objections have

19   to be filed by August 18th, with the meet and confer

20   by that date or they're waived?  Or do you need me to

21   break it down specifically.  Any outside date for

22   Attorney Mattei to get the transcripts to you, and

23   then how many days you're going to have for your

24   objections.  Just give me your proposal.

25       ATTY. PATTIS:  Not withstanding the hotly

26   contested nature of the litigation, the relationships

27   between counsel are solid and secure.  We have a good

1    working relationship on this.  And so I don't think

2    you need to say more than necessary.  If we think

3    something's necessary, we will - I would request

4    permission to approach the Court.

5         The question I have for you, judge, is assume

6    that we start to knock these off on a rolling basis.

7    Do you want to get the ones that we've done before

8    the 18th, so you got a jump on these?

9         THE COURT:  I would say this.  It doesn't sound

10   like it's going to be as much as a project as I

11   thought.  So if I can get everything by the 18th,

12   that's fine.

13        ATTY. PATTIS:  Okay.

14        THE COURT:  I'll do it either way.  Whatever's

15   easier for counsel.  I'm perfectly fine with getting

16   one package on the 18th.  Given that it doesn't seem

17   to be - doesn't look like it's going to be a

18   full-time job.  If something changes though, reach

19   out, okay?

20        ATTY. MATTEI:  Thank you, judge.

21        ATTY. PATTIS:  Yes.

22        THE COURT:  So I'll just put the order in, and

23   I'll leave it to you to work together on that.

24        All right.  So, we're down obviously the Genesis

25   defendant.  When we originally booked this trial,

26   Genesis was in, and that case was not a hearing in

27   damages, that liability was at issue there.  So I'm

1    just trying to get a better idea of when we start

2    picking a jury too.  And for our own schedules, how

3    long evidence will be to a verdict.  So, we are going

4    to have Mondays off during the trial.  I should say

5    the jurors will have Mondays off.  Whether we'll have

6    motions to argue or anything to do ourselves, remains

7    to be seen.  But, at this point I'm planning on

8    Mondays off from evidence.

9         So I don't know if you've had any discussions

10   since.  If not, you know, Attorney Mattei, maybe you

11   can let me know, and then Attorney Pattis, you can

12   let me know what your case in chief.  Attorney

13   Mattei, what you anticipate.  And then I'll ask

14   Attorney Pattis about his case.  And then we can just

15   sort of add in open and close charge, and

16   deliberations.  Just so that we can see if this is a

17   nine-week trial or a three-week trial at this point.

18        So have you had any discissions, Attorney

19   Mattei, or can you at least tell me what you

20   anticipate your case in chief to be?

21        ATTY. MATTEI:  Attorney Pattis and I have kind

22   of ballparked what we thought.

23        THE COURT:  All right.  And so when you

24   ballparked, I just want to make sure I understand.

25   From opening to a verdict, or just evidence.

26        ATTY. MATTEI:  Opening to a verdict.  Opening to

27   a verdict.

THE COURT:  Okay.  With Monday's off?

ATTY. MATTEI:  With Monday's off.  And I think
we were kind of in the four-to-six-week timeframe.
In terms of our case judge, I think the bulk of that.
I understand from Attorney Pattis that he doesn't
anticipate having much of a defense case, and so I
would say that we're somewhere between three and a
half and four weeks in our case.  I would say.

THE COURT:  Anything to add to that, Attorney
Pattis?

ATTY. PATTIS:  Yeah.  We might not offer a lot
of witnesses, but I wouldn't characterize us as
saying we don't have much of a defense.  We think
we've got a winning defense.  But –

ATTY. MATTEI:  Well –

ATTY. PATTIS:  You know, given the liability
ruling and I think the thing that was reassuring to
me, judge, was although I've not yet read the motions
in limine from the defense, and discussing them with
Attorney Alinor and Attorney Mattei, we're thinking
about the same case.  And so that's reassuring in
terms of confusion early on.  And so I don't expect
long cross-examinations of the plaintiffs, and I –
you know, there are certain questions that the
plaintiffs are going to have to prove.  Issues that
they're going to have to prove.  What our rebuttal
case might look like, I've tried to imagine that

1    based on the depos, and I've got a witness lock in.

2    So I think the four-to-six-week range is reasonable.

3    I don't think it will go more than six weeks.  I'd be

4    stunned if it went less than three or four though.

5    So I'd say the four-to-six-week range is an

6    appropriate estimate.  You're muted, judge.

7        THE COURT:  Thank you.  So I'll make that

8    notation.  Then the only other sort of housekeeping

9    matter I had before I turned it over to each of you

10   to tell me what needs to be adjudicated or needs a

11   briefing schedule is the request to bring items into

12   the courthouse.  Number 864.

13       So, I assume that Attorney Pattis, that would

14   apply to you as well with respect to computers and

15   cases of water, and protein bars, and all the other

16   things that are listed.

17       ATTY. PATTIS:  Well, I mean I did want to

18   inquire through the Court, when I saw bandages on

19   their list of items, do I need to notify my insurance

20   carrier of a risk of potential physical harm here?

21       THE COURT:  I'm not sure what to say to that.

22       ATTY. MATTEI:  No.

23       THE COURT:  Okay.  So there's no objection

24   obviously to me granting this.  So that Attorney

25   Mattei can show it to the marshals when he comes in.

26   I'm going to leave it to both lawyers to talk about

27   whatever equipment sharing, with respect to monitors

1    or screens, or any of that.  And I'm going to leave

2    it to the lawyers to talk to Mr. Ferraro about the

3    rooms that he will give you.  You'll have separate

4    rooms available, which will be locked at night that

5    you can store your bandages and cough drops and such.

6    Okay.  So I'll grant 864, and then I can put in the

7    order that this applies to the defendant's as well.

8    I'll put that text in there.

9         That should work with the marshals if Mr.

10   Ferraro talks to them, so that it should allow the

11   defense to bring in the same items.  All right.  So,

12   Mr. Ferraro, if you could just make sure the marshals

13   know that at the appropriate time.  All right.  So

14   just give me one moment.  Okay.

15        So why don't I start with plaintiffs' counsel on

16   any – putting aside obviously the motions in limine.

17   With any motions the plaintiffs have filed since our

18   last status conference, that they believe are ready

19   to be adjudicated today, and then we'll go to the

20   motions that need a briefing schedule.

21        ATTY. REILAND:  Your Honor, I apologize for the

22   interruption, and Attorney Mattei, I do as well.

23   This is Attorney Zachary Reiland from Pattis and

24   Smith.  Your Honor, I am currently in court.  I

25   wonder if the Court might excuse me from this

26   conference at this point.  I'm being called into the

27   courtroom by the judge.  I don't have any matters

1   that are set for adjudication or need to be discussed

2   today.

3       THE COURT:  I'm sorry, who was this?

4       ATTY. REILAND:  Attorney Zachary Reiland, from

5   Pattis & Smith.

6       THE COURT:  Absolutely.  No problem.

7       ATTY. REILAND:  Okay.  Thank you, your Honor.  I

8   appreciate that.  Goodbye.

9       ATTY. MATTEI:  Your Honor, the plaintiff's do

10  not have any motions pending that are ready for

11  adjudication today.

12      THE COURT:  The next category that need a

13  briefing schedule.  I did see entry number 875.  A

14  motion to compel.

15      ATTY. MATTEI:  Yes, judge.  That one needs a

16  briefing schedule.  And while we're on it, I just

17  wanted to also note that we had listed one motion in

18  limine in the trial management report that we will

19  not be filing.  And that was listed as number five

20  among our motions in limine on page seven of the

21  trial management report.  So just in case anybody was

22  wondering whether and when that will be filed, we're

23  just not going to be filing that one.  But as to the

24  motion to compel, yes, that needs a briefing

25  schedule.

26      ATTY. PATTIS:  I don't think I've seen that one

27  yet.  What does that pertain to?

1          ATTY. MATTEI:  This pertains to text messages
2     between Rob Dew and Dan Biondi, that have not been
3     produced –
4          ATTY. PATTIS:  Got it.
5          ATTY. MATTEI:  – even though they were subject
6     to prior discovery orders.
7          ATTY. PATTIS:  Got it.
8          THE COURT:  All right.  So that I would like to
9     adjudicate at the next status conference, or before
10    it if possible.  So, if today is the 14th, and our
11    status conference is the 26th, can you try to give me
12    some proposed dates for an objection and a reply?
13         ATTY. PATTIS:  Objection the 21st, judge.
14         THE COURT:  Sounds reasonable.
15         ATTY. PATTIS:  I mean the – (Inaudible) – the
16    objection the 21st.
17         ATTY. MATTEI:  We can file our reply on the 25th,
18    if that's all right with you judge?
19         THE COURT:  Can you do it by 10 a.m. so I have
20    enough time to look at it?  I mean, I glanced at it,
21    and it was long enough that I don't know how – what
22    the objection or the reply are going to look like.
23    And it may be something that I actually address on
24    the record on the 26th.  So ten o'clock on –
25         ATTY. MATTEI:  Ten a.m. is fine, judge.  Yup.
26         THE COURT:  Okay.  Just give me one moment.  One
27    thing while – and that's it for the plaintiff's,

1          correct?

2               ATTY. MATTEI:  Right.

3               THE COURT:  With respect to motions.  All right.

4      One thing that I didn't mention that we will address

5      on the morning of the first day of jury selection,

6      are any Covid-related issues.  Covid protocols and

7      such.  So I'm going to suggest Ron, that we start at

8      9 a.m. that day with counsel.  I did reach out the

9      branch to see what the current Covid protocols were,

10     but for example, if a juror comes down with Covid, or

11     an attorney, or something like that.  But because

12     things are changing to much with new variants and

13     this and that, I don't want to spend any time

14     discussing it today, because it may be different in

15     the two and a half weeks that we have left.  So,

16     we'll sort of punt on that, and we'll discuss that

17     the morning before we start with the jurors, okay?

18          All right.  So now turning to the defense.  So

19     I'm going to ask you first, Attorney Pattis, anything

20     that you filed that is ready to be adjudicated today?

21     And I know I just asked you to answer that, but one I

22     do see the motion to withdraw appearance that was

23     filed at number 874.  And I'll use the status

24     conference date for that hearing date since we'll

25     already be here.  So when you serve your client with

26     that, you can put the July 26th at 11 a.m., as the

27     hearing date on that.  And if your client is filing

1   an objection or if anybody's filing an objection, it

2   should be in before that date.  Okay.  So that one

3   you can take off your list.

4        ATTY. PATTIS:  And that's as to Attorney

5   Atkinson's motion, correct, judge?

6        THE COURT:  Yes.  874.

7        ATTY. PATTIS:  Because I do only because we have

8   the press person following this.  I want it to be

9   clear.

10        We had several items, judge.  We filed a renewed

11   objection to and request the trial be postponed for

12   30 days to avoid the problem of simultaneous trials

13   in Texas and Connecticut.  You had previously

14   rejected our requests.  I don't know if the other

15   side wanted to respond, or if you view that as ready

16   for adjudication.

17        THE COURT:  That's your motion to reargue at

18   867.

19        ATTY. PATTIS:  Yes.

20        THE COURT:  All right.  Attorney Mattei, are you

21   looking to file anything in response?

22        ATTY. MATTEI:  Yes, your Honor, we'll be filing

23   an objection to that.  And we don't have - your

24   Honor, if you'd like, if you want to get all of this

25   done before the next status conference, we think that

26   we can do that.

27        THE COURT:  So give me your proposal, and then

1    Attorney Pattis, you can give me your proposal for

2    your reply, because I sure would like to rule on it

3    sooner rather than later.

4        ATTY. MATTEI:  So there are a number of motions

5    that they have judge.  I think we would like to take

6    to the point –

7        THE COURT:  Well, this is just – what I just

8    want to deal with right now is the motion to reargue

9    the denial of the continuance of the trial date.  So

10   this –

11       ATTY. MATTEI:  Sure.

12       THE COURT:  – is at entry number 867.

13       ATTY. MATTEI:  All right.  So we would ask for

14   the 22nd.

15       THE COURT:  And for a reply, Attorney Pattis?

16       ATTY. PATTIS:  The 25th at 10 a.m.

17       THE COURT:  That works.  This would go a lot

18   quicker if I was a better typist.  All right.  So

19   give me one second.  I did also see your motion to

20   quash at 868.

21       ATTY. PATTIS:  I think we'll be able to resolve

22   that by way of a – can you hear me, judge?

23       THE COURT:  I can.

24       ATTY. PATTIS:  At – just before we filed that, I

25   had a discussion with Attorney Mattei that suggested

26   that we may be able to reach an agreement on that.

27   But, in an abundance of caution, I suppose we ought

23

1       to have a briefing schedule for it.

2           ATTY. MATTEI:  We'll take the same date, your

3       Honor, for all of these.  If it's okay with you?

4           THE COURT:  That works.

5           ATTY. PATTIS:  And we would request that the

6       25th at 10 a.m. you know to –

7           THE COURT:  That works, but you'll let me know

8       if there is a resolution sooner rather than later?

9       Because even –

10          ATTY. PATTIS:  Yes.

11          THE COURT:  – before you're filing your reply,

12      I'm starting to work on it, and if I can cross it off

13      my list that would be really nice.

14          ATTY. MATTEI:  And judge, just to that point.

15      As we've been doing.  We may be getting some of our

16      opposition briefing in earlier than the deadline.  In

17      fact I expect that we will.  And if we do, if we

18      could just have the same practice of replying party

19      letting the Court and the other side know if they

20      will file a reply.  And then that will allow if

21      there's not going to be any reply, that will allow

22      everything to get adjudicated sooner.

23          THE COURT:  That would be terrific.

24          ATTY. PATTIS:  Understood.

25          THE COURT:  Okay.  And then the last thing I

26      think that I have, unless I've missed something,

27      Attorney Pattis.  Is the motion for permission to

1          appear pro hac vice.  Did I miss anything?

2               ATTY. PATTIS:  No.  No, you did not.

3               THE COURT:  Okay.  So Attorney Mattei, are you

4          looking to file anything in response to this?

5               ATTY. MATTEI:  Your Honor, we probably will,

6          given the motion to continue, and how that interacts

7          with the motion for pro hac admission.  So we would

8          ask for – if you'd like, judge, would you like us to

9          do something earlier than that?  I know you said

10         before that you consider these motions to largely be

11         between the moving party and the Court.

12              THE COURT:  I do.  I do.  But I do believe it is

13         between the moving party and the Court.  But –

14              ATTY. PATTIS:  May I be heard, judge?

15              THE COURT:  Yes, sir.

16              ATTY. PATTIS:  May I be heard?

17              THE COURT:  Yes.

18              ATTY. PATTIS:  Norm Pattis speaking.  Attorney

19         Mattei and I have discussed this.  This motion for

20         pro hac vice is not strategically linked to the

21         objection to the trial date.

22              So in other words, we are not going to argue,

23         should you deny our motion to continue the trial,

24         that Mr. Jones right to counsel of choice was

25         abridged because his pro hac vice counsel had to be

26         in Texas.  The basis for the motion is, there have

27         been some turbulence in the – in my relationship with

1    the defendants, as the Court may be aware from a

2    motion to withdraw earlier.

3         And there has been a rearrangement of counsel

4    representing the defendants.  And Mr. Reynal has – is

5    playing a role that I had hither to play.  He has

6    more access to people and is located in Texas and has

7    maintained an active relationship with the various

8    stake holders in this case, as a time in which mine

9    was strained.

10        And so I have worked with him since he appeared

11   initially in Texas in January.  In fact, it was I who

12   approached him to come into the case to replace prior

13   counsel.  You know, I know him to be a former federal

14   prosecutor.  I trust his instincts implicitly.  I

15   would trust him with my life.  I want him at table at

16   trial at evidence.  If he can't be there during jury

17   selection, well, that's life.  But I can assure the

18   Court and counsel. and I'll be bound by this

19   commitment.  That we are not going to argue, should

20   you deny our motion to move the trial.  That Mr.

21   Reynal's – and if you admitted Mr. Reynal, that

22   somehow this – we're not going to try to leverage

23   that admission into a different – additional basis to

24   postpone the trial.

25        I need him here for reasons that I don't want to

26   put on the record.  And I would request that the

27   Court consider this to be simply between the Court

26

1    and counsel.  On a prior occasion, our adversaries

2    objected to pro hac vice counsel in the form of Mr.

3    Rademacher.  I don't if the Court was influenced by

4    that objection.  Mr. Jones at that point was deprived

5    his counsel of choice.  That continues to resonate in

6    the case.  I simply think in terms of trial

7    management and my ability to get what – to get all

8    the moving pieces in this case moving in the right

9    direction at an appropriate time to deliver a trial

10   within the timeframe that we have estimated, I need

11   Mr. Reynal.  And he is Mr. Jones' choice, and so I

12   would ask the Court to act on that motion today if

13   possible.

14        ATTY. MATTEI:  Judge, we would –

15        THE COURT:  Attorney Mattei, is there any reason

16   you just can't state your opposition on the record

17   without something in writing?

18        ATTY. MATTEI:  Well, your Honor, we'd like just

19   a couple of days to consider whether we need to file

20   anything at all.  But, you know, this case has been

21   unique.  In fact the Court has commented on the

22   rotating cast of defense counsel, and how there have

23   been strategic changes in counsel.  And so we want a

24   couple of days to figure out whether we think that

25   this would be appropriate.

26        We're happy to let the Court know by Monday,

27   whether we are going to file something.  And to get

1   that filing on if we decide to do it, by no later

2   than Tuesday.

3        ATTY. PATTIS:  Judge, my position is that - one

4   of the few areas in which I strenuously disagree with

5   an assertion of counsel is, that there was anything

6   strategic about the last motion.  I'm not going to

7   put those reasons on the record, because that would

8   require Mr. Jones to waive.

9        I'm here.  My adversaries objected.  The Court

10  in its ruling noted the rotating cast of counsel in

11  this case.  The case does present unique

12  difficulties.  I think that Mr. Reynal simplifies

13  this case considerably and provides me and Mr. Jones

14  with assurances that it will move within the Courts

15  schedule.  I would ask for the Court to rule today if

16  possible.

17       THE COURT:  So Attorney Pattis, how in granting

18  this, right, I would have to have some assurances

19  that pro hac counsel was actually available for the

20  proceeding.

21       ATTY. PATTIS:  He will -

22       THE COURT:  And based on what - based on the

23  filings to date with respect to the other trials, I

24  don't know in good conscience how I could convince

25  myself that he was available.

26       ATTY. PATTIS:  He will be available for

27  substantial - assuming that both courts continue with

```
1    the current schedules.  He won't be available every
2    day.  And I will – either Attorney Smith or I will
3    take the role of lead counsel in this case.  And Mr.
4    Reynal will have a seat at counsel table.  But given
5    the intricacies of this case, we need him, and we
6    need that open line of communications.  And we need
7    as much of him as we can get.
8        Now if he needs to go down to Texas and say as
9    to that second trial, you know, I need to be in
10   Connecticut – this is one of these vagaries of
11   federalism issues, where we've got courts in
12   different jurisdictions with different imperatives,
13   and we can't reconcile them.  But I do have a client
14   who would like Mr. Reynal in this case for as much as
15   we can get.  And I can tell you judge, that of all
16   the lawyers – you know, I've been involved in this
17   roughly three and a half years, of all the lawyers
18   that I've worked with in the case, he is the one that
19   I trust most, and I need him.
20       THE COURT:  Just give me one moment.  So I have
21   actually three questions, but just let me make notes
22   of them because I'll forget.
23       So typically when I grant a pro hac application,
24   I require local counsel and pro hac counsel from that
25   day forward to attend all court proceedings, which
26   includes depositions.  This would be unless somehow
27   the trials are rearranged, this would be unique for
```

1    me, in that I would have to change my template order.

2    Because I think what you're suggesting is, he be

3    granted pro hac admission, but not, I think you

4    already said if the continuance was not granted, he

5    would not be able to attend jury selection.  And

6    depending on the other trial – so is what you're

7    proposing sort of a situation where he's granted pro

8    hac status, but is not required to attend all court

9    proceedings?  Just so I understand it.

10         ATTY. PATTIS:  Yes.

11         THE COURT:  Okay.

12         ATTY. PATTIS:  Yes.

13         THE COURT:  And then because I do – I am

14    concerned about that and his availability.  I've

15    heard on the record and in filings, conflicting

16    things about the other cases.  So, I'm not sure what

17    his availability is.  I'm not sure how long those

18    other cases are.  I heard, I thought at one point

19    maybe from Attorney Mattei, that if there was any

20    overlap with that first Texas trial, it would only be

21    a matter of a couple days.  So I don't know how you

22    can address that.  And then once I decide this, are

23    you looking for another hearing on the issue?

24         ATTY. PATTIS:  I'm not – no, judge.  Well, I

25    don't understand the other hearing part of your

26    question.  I'm sorry.

27         THE COURT:  Well, if Attorney Mattei files an

```
1          objection, do you now want a –
2               ATTY. PATTIS:  No.  I'm not looking for -
3               THE COURT:  All right.
4               ATTY. PATTIS:  No.  I'm not looking for a
5          hearing.
6               THE COURT:  Can you – what information can you
7          give me about the other cases?  Because I think it
8          makes a difference as to whether he's available for
9          the jury selection and trial.  What can you tell me
10         about this availability?  That other trial, the first
11         trial starts I thought –
12              ATTY. PATTIS:  August 25th.
13              THE COURT:  July –
14              ATTY. PATTIS:  Or July 25th.
15              THE COURT:  July 25th.  And what is your best
16         estimate as to when that will be over?
17              ATTY. PATTIS:  Judge, my understanding and from
18         speaking with Mr. Reynal is unlike Connecticut, Texas
19         does not have individual sequestered voir dire.  And
20         so I believe jury selection will be short work there.
21         A day or so.  And the case is expected to begin with
22         jury selection on July 25th.  There's a motions
23         hearing tomorrow that will largely determine the
24         scope of the case.  The outer estimate is a
25         three-week trial.  The lower estimate is a two-week
26         trial.
27              So sometime in mid-August they will have a
```

1     verdict.  My expectation for us is, there may be

2     challenges in picking a jury, and it could take three

3     or so weeks her, depending – and we'll know within a

4     couple of days of interviewing panel members how –

5     whether that's the case.

6         So I don't expect that Mr. Reynal would be

7     involved in jury selection, but I do think he'd be

8     available at the commencement of evidence, which is

9     expected as I understand it to begin just after Labor

10    Day.  There is a second – and the first Texas trial

11    is Sandy Hook related.  Two plaintiffs similarly

12    situated to the plaintiffs in this case.  The second

13    trial pertains to an issue arising out of the

14    Parkland Shooting in Florida, and misidentification

15    of a potential shooter.  I believe that case is

16    scheduled for mid to late September.  And again, is

17    another two-to-three-week event.  If that case goes

18    forward, that will be problematic for us.

19        And we will not have Mr. Reynal throughout the

20    trial.  But as a trial management issue, it would be

21    my responsibility to manage that to assure that Mr.

22    Jones is not prejudiced.  We're not looking to

23    designate Mr. Reynal as lead counsel.  I've listed

24    all the lawyers in my firm who are working on this

25    who will possibly appear.  Mr. Reynal would be one of

26    those lawyers.  Lead counsel, whether it be Mr. Smith

27    or I at the time of trial, will be responsible for

```
1      managing the presentation of evidence, and the

2      expectations of jurors, both – and if Mr. Reynal

3      can't be present, that will be unfortunate for us,

4      but the client wants him.

5           THE COURT:  Right.  But Attorney Pattis, the

6      problem is, it's one thing if in my mind if he is not

7      present for the entire jury selection.  But it's

8      another thing entirely to have him present only for a

9      part of our trial.  Because certainly from what

10     you're telling me with respect to your dates, if

11     that – if his second Texas trial goes forward, he

12     will not even be available for this entire trial.  So

13     right now it doesn't sound like he's available for

14     some of – a couple weeks of our jury selection, and

15     at least a couple weeks of our trial.  Are there

16     motions for continuances that are pending in either

17     of those other Texas cases, such that if they're

18     granted, he would be entirely –

19          ATTY. PATTIS:  There are not.  Mr. Jones wants

20     these cases adjudicated and he wants to move on.  And

21     so we – we were surprised by the way the Texas and

22     Connecticut Courts differed in their response to the

23     lifting the stay incident to the bankruptcy.  In

24     Texas, the trial date was lost.  And when the cases

25     came back to state courts, new dates were imposed.

26          THE COURT:  Can I interrupt you Attorney Pattis,

27     respectfully.  The date, the trial date had passed.
```

1        So there was no trial date to go back to.  In my case

2        the trial date hadn't passed.  I'm just wondering if

3        you can address whether or not you asked the Texas

4        judge?  Showed them a copy of the order –

5            ATTY. PATTIS:  We did not.  I'm not in the Texas

6        case.  I'm not going to ask for –

7            THE COURT:  Well, your client.  I apologize.

8        Your client.  I didn't know, you could have been pro

9        hac in that case.  But I wonder if your client

10       advised the Texas judge of my order and indication?

11       Because if there was a motion for continuance that

12       was filed there, and that Texas judge was aware that

13       we had the long-standing trial date, which we had not

14       lost during the stay and then she or he denied the

15       motion for continuance.  That would perhaps matter

16       here.  Do you understand what I'm trying to say?

17           ATTY. PATTIS:  Yeah.  I didn't think that it

18       would candidly.  And I'm not in a position to advise

19       on Texas.  No such motion has been filed.  I would

20       certainly request that they do it as to the second

21       trial.  Our position and respectfully, is that we

22       thought the Court's decision to adhere to the initial

23       date caught us all by surprise.  For example, there

24       were expert disclosures that didn't take place during

25       the stay period.  But we respect the decision and

26       your discretion to make it.  And so we'll be present.

27           As to the second trial.  We can file a motion

1     and if the Court denies it, and that's going to have

2     a material impact on your decision making, we'll do

3     so.  And then we'll return.  But I would like to know

4     that he's –

5          THE COURT:  I guess I – yeah.

6          ATTY. PATTIS:  Let me finish, please?  As to his

7     ability –

8          THE COURT:  I'll let you finish in a second,

9     Attorney Pattis.  I'm just struggling and I'm trying

10    to – I'm not sure I'm making it clear why I'm

11    struggling so much, because I have the pro hac issue

12    on the one hand, and then I have your motion to

13    reargue on the other hand.  And I'm just – I

14    understand what your position is.  I understand

15    Attorney Reynal can't be in two places at one time.

16    But I do think if he's granted pro hac admission in

17    Connecticut, he would need to be present for the

18    entire trial.  And I'm just trying to figure out why

19    there was a motion for continuance here, but no

20    continuances in the other cases, which would make him

21    available, and your client.

22         ATTY. PATTIS:  We have – all the lawyers in my

23    firm that are not in the hospital, have been present

24    at various points at this status conference today.

25    Not every one of us will be at trial every day.

26    Certainly one of us, or maybe two of us will be.  And

27    we view Mr. Reynal as part of that lineup, as it were

1    of available resources.  Would I like to have him

2    there every day?  Yes.  If I can't, am I going to -

3    it would be like Mr. DeMatteo not appearing.  Or it

4    would be like Mr. Reiland not appearing on a

5    particular day.  I or Mr. Smith will be responsible

6    for the orderly presentation of the trial.  The

7    lineup, who appears on a different day, we think

8    that's our right to make that decision.

9        THE COURT:  All right.  So I think I understand

10   what you're saying now.  And maybe it's because it's

11   a see change for me, because I have consistently my

12   entire career required pro hac counsel to attend

13   everything.  But I'm not adverse to considering what

14   you're proposing.  So you're proposing -

15       ATTY. PATTIS:  The reason for it judge.  Mr.

16   Reynal has a unique position of confidence with Mr.

17   Jones - (Audio Breaking Up) -

18       THE COURT:  All right.  I don't know if you can

19   hear me, Attorney Pattis.  We've lost your

20   connection.  Can you hear me, Attorney Pattis?  I

21   don't know, Attorney Atkinson, if you could - or

22   Attorney Smith, whoever, if you could just maybe text

23   him or call him and ask him to maybe log out -

24       ATTY. PATTIS:  Can everybody hear me right now?

25       THE COURT:  I do.  Okay.  I don't see you, but I

26   hear you.

27       ATTY. PATTIS:  Can anybody hear me?

1      THE COURT:  We can hear you.

2      ATTY. PATTIS:  I'm sorry, judge.  A call came in

3 and knocked me off on my cell phone.  I'm sorry.

4      THE COURT:  That's all right.

5      ATTY. PATTIS:  So, you know Mr. Reynal enjoys a

6 unique position of trust with Mr. Jones.  Given the

7 strain in Mr.  Jones and my relationship, I think

8 having – his availability to and to be present at

9 trial, will be a substantial and material factor in

10 my ability to present an orderly trial –

11      THE COURT:  All right.

12      ATTY. PATTIS:  – and to get the responses that I

13 need from Texas.

14      THE COURT:  I understand.  This was very helpful

15 to me.  So this is more of he will be there to assist

16 an as needed proposal, as opposed to appearing every

17 day.  All right.  So with that in mind, Attorney

18 Mattei.  I don't know if you still need time to

19 consider what you're going to file.  Are you – you're

20 muted.

21      ATTY. MATTEI:  Thank you.  I would like just a

22 couple days to consider that, judge.  And one issue,

23 and perhaps Attorney Pattis can resolve this as well.

24 The initial application for pro hac admission,

25 indicated that Mr. Reynal was only going to be

26 appearing on behalf of Mr. Jones.  Not Mr. Jones and

27 Free Speech Systems.  I've had conversations with

1      Attorney Pattis about that, and he indicated that

2      that was an error.  And that in fact, Attorney Reynal

3      does intend to represent both Mr. Jones and Free

4      Speech Systems, which we think would be necessary.

5      But no amended application has been filed.  So

6      perhaps we can clear that up now and then we can have

7      at least a couple days to consider it.  I would

8      appreciate it.

9           THE COURT:  That sounds reasonable.

10          ATTY. PATTIS:  That was a Scribner's Error.  He

11     intends to appear for both parties, judge.

12          THE COURT:  All right.  So, any filing from the

13     plaintiff by July 18th, and Attorney Pattis, do you

14     want time if the plaintiff files anything, to

15     respond?

16          ATTY. PATTIS:  In an abundance of caution, I

17     should take some in case there's something

18     surprising.  So may I have to the 20th, please?

19          THE COURT:  Absolutely.  All right.  And then I

20     will rule either on the 20th or the 21st.  All right.

21     This actually answered a lot of questions.

22          ATTY. PATTIS:  Thank you.

23          THE COURT:  So this was helpful.  All right.

24     Have I missed anything?  No?

25          ATTY. MATTEI:  One thing, judge.  You didn't

26     miss it, but we missed it.

27          ATTY. PATTIS:  Defense –

1      ATTY. MATTEI:  We are going to be filing an

2      amended joint trial management report.  We have

3      reached – we're going to be amending the joint

4      statement of the case to make it a bit shorter.  We

5      just had a late conversation with Attorney Pattis

6      this morning to reach that agreement.  So we are

7      going to be filing an amended trial management report

8      with that newly agreed upon statement of the case.

9      THE COURT:  Okay.  When can I expect that?

10      ATTY. PATTIS:  That's correct.

11      ATTY. MATTEI:  Today.

12      ATTY. PATTIS:  Attorney Sterling, this morning –

13      (Audio Breaking Up) –

14      THE COURT:  You're breaking up, Attorney Pattis.

15      I heard that's correct.  And that was –

16      ATTY. PATTIS:  Yes.  I had a brief – Attorney

17      Sterling called me this morning en route to this

18      unsatisfactory location, and we reached an agreement,

19      and you will receive language that we both agree

20      upon.

21      THE COURT:  That's terrific.  Okay.  Sounds

22      good.  So, I will see everyone then July 26th at 11

23      a.m.  And I hope you all stay well.

24      ATTY. MATTEI:  Thank you, your Honor.

25      THE COURT:  We're adjourned.

26  (The matter concluded.)

27

```
DKT NO:  X06-UWY-CV186046436-S    :  COMPLEX LITIGATION DKT

ERICA LAFFERTY                    :  JUDICIAL DISTRICT WATERBURY

v.                                :  AT WATERBURY, CONNECTICUT

ALEX EMRIC JONES                  :  JULY 14, 2022

DKT NO:  X06-UWY-CV186046437-S


WILLIAM SHERLACH

v.

ALEX EMRIC JONES


DKT NO:  X06-UWY-CV186046438-S


WILLIAM SHERLACH

v.

ALEX EMRIC JONES
```

                    *C E R T I F I C A T I O N*


     I hereby certify the foregoing pages are a true and correct
transcription of the audio recording of the above-referenced
case, heard in Superior Court, G.A. #4, Waterbury, Connecticut,
before the Honorable Barbara Bellis, Judge, on the 14th day of
July, 2022.



          Dated this 18th day of July, 2022 in Waterbury,
Connecticut.



                              _____

                              Darlene Orsatti

                              Court Recording Monitor